675 F.2d 1319
 28 Fair Empl.Prac.Cas. 1134,
28 Empl. Prac. Dec. P 32,665, 219 U.S.App.D.C. 94
 NATIONAL ASSOCIATION OF CONCERNED VETERANS, et al.,
Appellees/Cross-Appellants,
v.
SECRETARY OF DEFENSE, et al., Appellants/Cross-Appellees.
Mark GREEN and Corporate Accountability Research Group
v.
DEPARTMENT OF COMMERCE, Appellant.
Beverly L. B. PARKER
v.
SECRETARY OF TRANSPORTATION, Appellant.
 Nos. 81-1364, 81-1424, 81-1791 and 81-1965.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Feb. 25, 1982 in No. 81-1965.
Submitted on Briefs Feb. 25, 1982 in Nos. 81-1364, 81-1424.
Argued Feb. 26, 1982 in No. 81-1791.
Decided April 23, 1982.
 
 Appeals from the United States District Court for the District of Columbia (D.C.Civil Action Nos. 79-0211, 77-0363 and 79-3443).
 Charles F. C. Ruff, U. S. Atty., Washington, D. C., at the time the briefs were filed, and Royce C. Lamberth and Kenneth M. Raisler, Asst. U. S. Attys., Washington, D. C., were on the briefs, for appellants in all cases. Cheryl M. Long, Asst. U. S. Atty., Washington, D. C., was also on the brief, for appellant in No. 81-1965.
 Barton F. Stichman, David F. Addlestone, and Ronald Simon, Washington, D. C., were on the brief, for appellees in No. 81-1364.
 John Oliver Birch, Asst. U. S. Atty., Washington, D. C., argued on behalf of appellants in No. 81-1791 and No. 81-1965.
 David C. Vladeck, Washington, D. C., with whom Alan B. Morrison, Washington, D. C., was on the brief, argued on behalf of appellees in No. 81-1791.
 Charles Stephen Ralston, New York City, with whom Jack Greenberg, New York City, was on the brief, argued on behalf of appellees in No. 81-1965.
 Before TAMM and WILKEY, Circuit Judges, and GERHARD A. GESELL,* United States District Judge for the District of Columbia.
 Opinion PER CURIAM.
 
 
 1
 Concurring opinion filed by Circuit Judge TAMM.
 
 PER CURIAM:
 
 2
 In each of the three captioned appeals the United States challenges the award by the District Court of attorneys' fees to the successful plaintiffs below. These appeals are consolidated for convenience in this single opinion because they raise common questions relating to the application of this Court's Copeland III decision. Copeland v. Marshall, 641 F.2d 880 (D.C.Cir.1980) (en banc ).
 
 
 3
 Two of these cases were brought under the Freedom of Information Act, 5 U.S.C. § 552 (1976) ("FOIA"), and the third arose under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1976). The District Court awarded a fee in each case only after first determining that claimant had "prevailed" and was otherwise entitled to a fee award in some amount.[1] In each instance the District Court then attempted to apply the "market value" approach approved in Copeland III in order to determine an appropriate fee.[2] On appeal the United States does not challenge appellees' entitlement to attorneys' fees but contends that the awards failed to comply with the requirements of Copeland III and that the level of the fees is excessive.
 
 
 4
 The initial task in determining an appropriate fee award under Copeland III[3] is to establish the "lodestar": the number of hours reasonably expended multiplied by a reasonable hourly rate. 641 F.2d at 891. A reasonable hourly rate was defined in Copeland III as that prevailing in the community for similar work. Id. at 892. Once established, the lodestar may be adjusted to reflect various other factors. The Court noted that a premium should generally be awarded if counsel would have obtained no fee in the event the suit was unsuccessful or if the fee award is made long after the services were rendered. Id. at 892-93. In addition, it indicated that the lodestar figure may be either increased or reduced to recognize legal representation of unusually superior or inferior quality. Id. at 893-94. Recognizing that some of the elements of this formula were necessarily somewhat imprecise, the Court emphasized that "we ask only that the district court judges exercise their discretion as conscientiously as possible, and state their reasons as clearly as possible." Id. at 893.
 
 
 5
 The framework thus established by Copeland III placed a difficult burden on the District Courts which can only be met where fee applicants meet their correspondingly heavy obligation to present well-documented claims. Our review of these appeals establishes that there is a definite need for a further definition of the obligations of attorney fee applicants in documenting their claims as well as a need to define more clearly procedures to be followed in the District Court when opposition to a requested fee award is noted. We vacate each of the awards here under review and remand for further proceedings consistent with the procedures appropriate for implementing Copeland III as outlined in Part I of this opinion. The specific deficiencies found in the record of each of the captioned cases are stated in Part II.
 
 I.
 
 6
 For purposes of convenience our discussion will be under the following headings which are suggested by one or more of the cases before us.
 
 
 7
 (1) What type of factual showing is necessary to establish the prevailing hourly rate in the community for similar work?
 
 
 8
 (2) What type of factual showing is necessary to establish the number of hours reasonably expended on the case?
 
 
 9
 (3) What type of factual showing is necessary to support a claim for an adjustment to the lodestar?
 
 
 10
 (4) When should the District Court allow formal discovery against the fee applicant?
 
 
 11
 (5) When should the District Court conduct an evidentiary hearing on an attorney fee application?
 
 
 12
 In resolving these issues the Court recognizes several competing concerns. The District Court must, of course, be supplied with sufficient information to determine a reasonable and equitable fee. Obviously, fee applications should not be rigidly confined to a single mold and experience will suggest appropriate variations, but there is a need to indicate the minimum documentation which should be presented to a District Court before it may act on a fee application. Procedural fairness also requires that the party opposing the fee be permitted the opportunity to scrutinize the reasonableness of the fee requested and to present any legitimate objections. The opponent of the fee award has a right to utilize all reasonable means to resolve any significant factual dispute that would substantially affect the size of the award.
 
 
 13
 But contests over fees should not be permitted to evolve into exhaustive trial-type proceedings.[4] Apart from the burden this would impose on District Courts, many factors used in calculating the fee award can usually be resolved with a reasonable degree of accuracy based on an adequately documented fee application. Other elements of the Copeland III formula, in particular any adjustment in the lodestar to reflect the risk that the suit would be unsuccessful or to recognize unusually good or bad representation, may be resolved by the District Court through a qualitative evaluation based primarily on the Court's own observation and facts readily submitted through the application itself. More importantly, attorneys would be deterred from undertaking FOIA and Title VII actions if each victory on the merits were inevitably but the prelude to an exhausting and uncertain battle over fees. This would frustrate the purposes of FOIA and Title VII.
 
 
 14
 With these general considerations in mind we turn to consider each of the issues listed above. A full discussion of the key elements in fee determination is necessary to guide resolution of these cases on remand and to emphasize the need to develop a more standardized approach for future application of our controlling decision in Copeland III.[5]
 
 
 15
 (1) What type of factual showing is necessary to establish the prevailing rate in the community for similar work?
 
 
 16
 The key issue in establishing the proper lodestar is to determine the reasonable hourly rate "prevailing in the community for similar work." 641 F.2d at 892. The Court in Copeland III indicated that some "relevant considerations" included "the level of skill necessary, time limitations, the amount to be obtained in the litigation, the attorney's reputation, and the undesirability of the case." Id. The Court also noted that the hourly rate should generally depend on the experience of the attorney and the type of work involved. Id. However, no guidance was provided as to the nature of the submission an applicant for a statutory fee award should make in the District Court to support the hourly rate requested.[6]
 
 
 17
 Setting a prevailing hourly rate has proven more difficult than perhaps may have been contemplated. Lawyers organize their practice in many different ways and employ a variety of billing techniques. Some counsel, including those associated with the more substantial firms in this city, have well-established billing practices and generally receive remuneration from their clients on a regular basis. The hourly rate obtained by an individual attorney will vary, however, not only according to the various factors enunciated in Copeland III, but also depending on his personal professional interests and the ability of his clients to pay. On the other hand, lawyers associated with public interest groups or single practitioners who specialize in Title VII or FOIA cases, for example, may obtain all or most of their fees from fee awards. Attorneys in this second group may not have an established "billing rate" that reflects how their own services have been valued in the market. Other lawyers undoubtedly fall somewhere between these two stereotypes. Sharp inflation has made even more difficult the judicial task of determining a prevailing rate since inflation perforce induces rapid change in billing practices.
 
 
 18
 The complexity of the market for legal services does not, however, reduce the importance of fixing the prevailing hourly rate in each particular case with a fair degree of accuracy. An applicant is required to provide specific evidence of the prevailing community rate for the type of work for which he seeks an award. For example, affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases provide prevailing community rate information. On the other hand, generalized "information and belief" affidavits from friendly attorneys presenting a wide range of hourly rates will not suffice. Recent fees awarded by the courts or through settlement to attorneys of comparable reputation and experience performing similar work are also useful guides in setting an appropriate rate.[7]
 
 
 19
 In addition, counsel for applicants should submit specific evidence of his or her actual billing practice during the relevant time period. This information, when available, will provide important substantiating evidence of the prevailing community rate.[8] In Copeland III this Court indicated that the hourly rate allowed should reflect, among other things, the level of skill necessary to conduct the case and the attorney's reputation. 641 F.2d at 892. These, of course, are also factors that tend to determine the rate that the attorney is able to command in the marketplace for similar work. Accordingly, the actual rate that applicant's counsel can command in the market is itself highly relevant proof of the prevailing community rate.
 
 
 20
 It is essential to this inquiry that counsel's billing practice be accurately documented. A fee applicant should be required to state the rate at which he actually billed his time in other cases during the period he was performing the services for which he seeks compensation from defendant. This rate is not what he would have liked to receive, or what the client paid in a single fortunate case, but what on average counsel has in fact received. It is obvious that where counsel customarily exercises billing judgment by not billing for the full amount of time expended this fact must be considered in calculating counsel's true billing rate.[9] Unless the applicant wishes the District Court to assume that applicant's individual rate claimed includes an allowance for the contingent nature of the suit, the applicant should supply data showing fees earned both in cases in which counsel prevailed and in which he lost.[10](2) What type of factual showing is necessary to establish the number of hours reasonably expended on the case?
 
 
 21
 An applicant for attorneys' fees is only entitled to an award for time reasonably expended. Thus the fee application must also contain sufficiently detailed information about the hours logged and the work done. This is essential not only to permit the District Court to make an accurate and equitable award but to place government counsel in a position to make an informed determination as to the merits of the application.
 
 
 22
 Casual after-the-fact estimates of time expended on a case are insufficient to support an award of attorneys' fees. Attorneys who anticipate making a fee application must maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney. As stated by the Court of Appeals for the Second Circuit, "any attorney who hopes to obtain an allowance from the court should keep accurate and current records of work done and time spent." In re Hudson & Manhattan R. R. Co., 339 F.2d 114, 115 (2d Cir. 1964); accord, In re Wal-Feld Co., 345 F.2d 676, 677 (2d Cir. 1965).
 
 
 23
 In the preparation of fee applications it is insufficient to provide the District Court with very broad summaries of work done and hours logged. Copeland III recognized that the fee application need not present "the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." Copeland III, 641 F.2d at 891, (quoting Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161, 167 (3d Cir. 1973)). But the application must be sufficiently detailed to permit the District Court to make an independent determination whether or not the hours claimed are justified. The better practice is to prepare detailed summaries based on contemporaneous time records indicating the work performed by each attorney for whom fees are sought.[11] In any event, once the reasonableness of the hours claimed becomes an issue, the applicant should voluntarily make his time charges available for inspection by the District Court or opposing counsel on request.[12]
 
 
 24
 Fees are not recoverable for nonproductive time nor, at least in the context of Title VII and FOIA, for time expended on issues on which plaintiff did not ultimately prevail.[13] 641 F.2d at 891. The fee application should therefore indicate whether nonproductive time or time expended on unsuccessful claims was excluded and, if time was excluded, the nature of the work and the number of hours involved should be stated.
 
 
 25
 (3) What type of factual showing is necessary to support a claim for an adjustment to the lodestar?
 
 
 26
 Once the lodestar has been adequately documented, the applicant may under appropriate circumstances request an adjustment of the lodestar based on the considerations enunciated in Copeland III, 641 F.2d at 892-94.[14] Copeland III listed three adjustment factors: extra compensation for the risk that the lawsuit would be unsuccessful and that counsel would receive no fee; extra compensation for delay in receipt of payment for services; and either an up or down adjustment to reflect unusually good or bad representation "taking into account the level of skill normally expected of an attorney commanding the hourly rate used to compute the 'lodestar.' " 641 F.2d at 892-94 (emphasis in original). The Court emphasized that "(t)he burden of justifying any deviation from the 'lodestar' rests on the party proposing the deviation." Id. at 892.
 
 
 27
 The purpose of adjusting the lodestar to reflect the contingent nature of a suit is to provide adequate compensation to counsel who undertake Title VII and FOIA work. Accordingly, some compensation for this factor is appropriate only if counsel would have received no significant remuneration if the suit were not successful. It is unnecessary to increase an attorney fee award to reflect the risk that the suit would not be successful if counsel would have been paid by his client regardless of the outcome.
 
 
 28
 The initial inquiry therefore in determining whether a premium for risk should be awarded must focus on the terms of any agreement between the applicant and his counsel relating to fees. The better practice would be for the applicant to include a copy of any such agreement in the fee application. In any event, the applicant should state whether any fee arrangement exists and recite its precise terms.
 
 
 29
 Once the applicant has established an entitlement to some kind of adjustment to the fee award because of the risk factor he must provide specific support for the risk premium requested. The task of the District Court in setting the risk premium is "inherently imprecise." 641 F.2d at 893. But the difficulties of the District Court should not be compounded by vague assertions in the fee application about why the applicant is entitled to a risk premium. At a minimum, the fee applicant should clearly identify the specific circumstances of the case which support a risk adjustment in the amount requested.
 
 
 30
 Copeland III emphasized that no premium for risk should be awarded where the hourly rate used in calculating the lodestar already contains an allowance for the possibility that the suit would not succeed and no fee would be obtained. 641 F.2d at 893. As a practical matter, however, the task of courts as well as fee applicants will be lightened if the lodestar fee requested does not include a risk premium. So long as the contingency factor is ignored in calculating the hourly lodestar rate it should be possible for the District Court, with experience, to develop fairly well-established community rates for particular types of work. Applicants should therefore attempt to present the proposed lodestar billing rate exclusive of any risk premium. If an award for risk is appropriate it can then be presented as a separate matter.
 
 
 31
 The lodestar fee may also be adjusted upward to compensate counsel for the lost value of the money he would have received resulting from delay in receipt of payment. As stated in Copeland III, "(t)he hourly rates used in the 'lodestar' represent the prevailing rate for clients who typically pay their bills promptly. Court-awarded fees normally are received long after the legal services are rendered." 641 F.2d at 893.
 
 
 32
 No precise formula is available to measure the delay factor. Some delay in receipt of payment is inevitable in the law as in any other service profession. Accordingly, any minimal delay may properly be ignored by the District Court in setting a fee award. Delay solely attributable to dilatory actions by plaintiff should also be discounted. Any claim for an adjustment to compensate for delay must be factually supported and the District Court's award must be explained in light of the circumstances of the case. Finally, as indicated in Copeland III, where the hourly rate used in computing the lodestar is based on present hourly rates a delay factor has implicitly been recognized and no adjustment for delay should be allowed. 641 F.2d at 893 n.23.
 
 
 33
 A final factor to be considered in adjusting the lodestar is the quality of the representation. An adjustment based on this factor is only appropriate, however, if the representation has been unusually good or bad "taking into account the level of skill normally expected of an attorney commanding the hourly rate used to compute the 'lodestar.' " 641 F.2d at 893. The Court could not have stated in clearer terms that an adjustment for the quality of representation should not be routinely awarded but only awarded in exceptional cases. An adjustment should not be made out of sympathy for claimant's cause or to mollify counsel because the lodestar figure claimed was reduced.
 
 
 34
 To support an adjustment on this basis the applicant must specifically request such an adjustment and state why it is warranted. Since the District Court is uniquely qualified to assess the quality of counsel's performance an adjustment of the lodestar based on this factor rests peculiarly in the Court's discretion. But in recognition of the possibility of appellate review we emphasize that the adjustment should be supported by factual considerations, not generalities.
 
 
 35
 (4) When should the District Court allow formal discovery against the fee applicant?
 
 
 36
 An issue left largely unresolved by Copeland III was the extent to which the opponent of a fee award is entitled to discovery. Both Title VII and FOIA authorize only "reasonable" awards of attorneys fees. Accordingly, the opponent is entitled to the information it requires to appraise the reasonableness of the fee requested and in order that it may present any legitimate challenges to the application to the District Court.
 
 
 37
 In the cases before us discovery requests by the United States primarily related to the justification for the claimed billing rate and the nature and extent of the work done by the applicant's counsel on various phases of the case. This information is essential in the calculation of the fee award and opposing counsel should have access to this information as a matter of right.[15] If hourly time charges are automatically made available for inspection, as we have suggested, and the submissions supporting prevailing rates are fully documented, discovery demands can be sharply focused.
 
 
 38
 As we have noted, it is not expected that fee contests should be resolved only after the type of searching discovery that is typical where issues on the merits are presented. The trial court retains substantial discretion based on its view of the submissions as a whole to guide any further inquiry. The District Court has adequate power to assure that discovery requests relating to issues other than rates and hours are pointed to clearly relevant issues. The sound administration of justice requires a balanced, informed approach to fee awards accomplished in reasonable time without turning such matters into a full trial. In light of the broad policy objectives Congress sought to achieve through Title VII and FOIA, attorneys must not be deterred from engaging in this type of work by the prospect of protracted litigation over reasonable demands for compensation. Nor should the zeal of government counsel be permitted to require applicants to expend substantial additional time supporting fee claims which will only result in a request for more compensation for these additional labors.
 
 
 39
 The United States has recently followed the practice in its opposition papers of seeking discovery by simply lodging a general request to take unidentified discovery. Discovery requests should be precisely framed and promptly advanced before final opposition papers are filed. The District Court and the applicant are entitled to have discovery demands in clear outline at an early stage after the fee application is filed. Unfocused requests to initiate discovery without indicating its nature or extent serve no purpose.(5) When should the District Court conduct an evidentiary hearing on an attorney fee application?
 
 
 40
 As Copeland III noted, no hearing was requested in that case and accordingly the Court did not have occasion to elaborate on the circumstances, if any, when an evidentiary hearing is required. 641 F.2d at 905. The cases before us directly raise the issue of whether and under what circumstances a hearing is required in statutory fee cases.
 
 
 41
 Disputed issues of fact frequently can be adequately resolved by the documentation accompanying the fee application and through appropriate discovery lodged with the Court. When the District Court determines that the information generated by these procedures provides an adequate factual basis for an award it may in its discretion decline to hold a hearing.[16] On the other hand, procedural fairness requires that a hearing be held where in the District Court's view material issues of fact that may substantially affect the size of the award remain in well-founded dispute.[17] If a hearing is held it should, of course, be sharply focused upon those issues which the District Court believes will materially affect the award in light of the submissions of the parties as supplemented by appropriate discovery.
 
 
 42
 The District Court's discretion in determining the need for a hearing, as in fixing the scope of permissible discovery, should be exercised in light of the fact that the interests of justice will be served by awarding the prevailing party his fees as promptly as possible. The District Court has adequate power to prevent the opponent of a fee award from engaging in a purely vindictive contest over fees.
 
 
 43
 Before turning to an analysis of the cases here under review, we express our concern that an unnecessary volume of attorney fee disputes are coming before the District Court as well as this Court.[18] More of these cases should be settled out of court. Having undertaken the task of defining the relevant record in attorney fee cases with greater precision the Court expresses its hope that litigants will be in a better position to resolve the relatively few genuine factual disputes which should be raised by properly framed attorney fee applications.[19] If serious settlement negotiations are held, even if they may prove not entirely successful, it should be possible for the parties to narrow the issues that must be brought before the District Court.
 
 II.
 
 44
 Each of the three cases before us will now be discussed separately in light of our observations above and the standards enunciated in Copeland III.
 
 
 45
 No. 81-1364/81-1424-National Association of Concerned Veterans, et al. v. Secretary of Defense, et al.
 
 
 46
 In this action appellees invoked FOIA in an effort to compel the Armed Services to publish, index and make available for public inspection certain military rules relied on in reviewing applications to modify administrative discharges from the military. After lengthy proceedings in the course of which the District Court issued a 25-page opinion on the merits of appellees' motion for a preliminary injunction, most of appellees' claims were resolved in their favor and the case was dismissed by praecipe. Upon consideration of appellees' motion for an award of attorney fees and costs and the government's opposition thereto the District Court made a fee award of $16,956.77, plus costs.
 
 
 47
 Appellants contend that the District Court erred in four respects. First, appellants challenge the District Court's use of the billing rate of $85.00 in computing the lodestar because it was not supported by the record and was explained only by the fact that the District Court had allowed the same rate in a recent Title VII action.[20] Appellants also challenge the District Court's allowance of total hours claimed on the ground that some of this time was either unproductive or expended in pursuit of claims on which appellees did not prevail. The District Court's award of a ten percent multiplier is also challenged, primarily on the ground that the District Court failed adequately to explain why a multiplier was justified and because, to the extent that a multiplier award might have been justified based on the contingent nature of the suit, the Court nonetheless erred since the hourly rate proposed by appellees already included a contingency allowance. Finally, it is claimed that the District Court erred in not holding an evidentiary hearing and in denying appellants' discovery relating to the hours and rates claimed by appellees.
 
 
 48
 The appellees provided the following information in support of their claim that $100 and $110 an hour were reasonable hourly rates for work performed by the two lead attorneys during 1979 and 1980:
 
 
 49
 (1) Generalized affidavits filed by each lead counsel stating only:
 
 
 50
 "I am informed that the current prevailing rate in Washington, D. C. for partners in law firms that specialize in military personnel law for litigating in federal court a case involving that area of law is from $100.00 to $125.00 per hour. Based on my experience in military personnel law and the Freedom of Information Act, I believe that the rate of $110.00 ($100.00) per hour is the current prevailing rate for an attorney of my experience in a case such as the instant case."[21]
 
 
 51
 (2) A copy of a stipulation dismissing a Privacy Act case against the military in which lead counsel in this case served as attorneys and received fees computed at $60 and $90 per hour for 18 hours of work performed in 1977 and 1978.[22]
 
 
 52
 (3) Affidavits describing the qualifications of plaintiffs' counsel in military law and FOIA.[23]
 
 
 53
 (4) Copies of two 1977 settlements of FOIA cases (not brought by counsel in this action) in which the government agreed to hourly rates ranging from $40 to $90 per hour.[24]
 
 
 54
 In support of the claim for $25.00 per hour for the work of a third-year law student, applicant cited Bachman v. Pertschuk, Civ. No. 76-0079 (D.D.C.1979), appeal pending, No. 81-2130 (D.C.Cir.), which noted that $20 and $22.50 per hour had been accepted by the government as appropriate for work by paralegals.[25]
 
 
 55
 The government objected to the hourly rates requested and proposed that $60 per hour was the appropriate rate. In the face of these conflicting and poorly documented contentions the District Court stated:
 
 
 56
 While the court finds that plaintiff's request is excessive, it also finds the government's rate to be too low. Accordingly, the Court adopts the same rates that it awarded in a recent Title VII case, Williams v. Civiletti, No. 74-0186 (D.C.Cir. (sic) Dec. 8, 1980). There this Court awarded an hourly rate of $85.00 an hour for the attorneys of similar experience and $20.00 an hour for the law clerks.[26]
 
 
 57
 We hold that appellees failed to provide adequate factual support for the hourly rates claimed and that the District Court lacked an adequate record to fix this lodestar rate. The need for additional data is amply demonstrated by the District Court's apparent need to rely on the rate it awarded in an unrelated Title VII case in order to set the hourly rate in this FOIA case. Appellees' conclusory "information and belief" affidavits are of no evidentiary value to the District Court in setting a proper rate. Evidence of widely disparate rates awarded in three other cases, all of which were settled by the government in advance of this Circuit's adoption of the "market-value" approach to fee awards in Copeland III, without more, provides an inadequate record for a reasoned determination of the prevailing community rate. On remand, both parties should be provided further opportunity to submit information on the appropriate billing rate.
 
 
 58
 With respect to hours claimed, each lawyer for whom fees were sought filed a detailed affidavit listing specific activities (e.g., "Research and drafting of FOIA part of complaint; Court appearance on plaintiffs' motion for a preliminary injunction") and the number of hours expended on each.[27] In addition, the affidavit of one counsel indicated that 24 hours claimed for work by a paralegal was spent on researching and assisting in the drafting of a motion for a preliminary injunction.[28] These submissions were entirely adequate to permit the District Court to determine whether fees should be awarded for all of the hours claimed and the government justifiably does not challenge the adequacy of the submissions on appeal.
 
 
 59
 However, appellants contend that the District Court erred in awarding fees for certain hours spent on particular aspects of appellees' FOIA claims that were ultimately rejected by the District Court. Specifically, appellants argue that any time expended following the filing of their opposition to appellees' motion for a preliminary injunction was wasted effort since appellants conceded most of the contested issues in their opposition papers. The District Court rejected this contention, noting that appellees' continued efforts in subsequent settlement negotiations led to further concessions by the government resulting in dismissal of the action by stipulation.[29] We discern no abuse of discretion in the District Court's determination not to disallow the hours in dispute. Although "no compensation should be given for hours spent litigating issues upon which plaintiff did not ultimately prevail," Copeland III, 641 F.2d at 902, this does not mean that the District Court (and still less this Court) must engage in a minute examination of each theory or claim advanced and what results it did or did not produce. See Copeland III, 641 F.2d at 892 n. 18; Lamphere v. Brown Univ., 610 F.2d 46, 47 (1st Cir. 1979).
 
 
 60
 Appellants also challenge the award of a ten percent multiplier. A 25 percent multiplier was requested based on the contingent nature of the suit. Attached to the fee application was an affidavit prepared by the president of the appellee organization stating that it had agreed with counsel that it would pay no fees "except for the possibility of a court award of attorneys' fees and other litigation costs."[30]
 
 
 61
 After correctly noting that the burden was on the applicant to justify an adjustment of the lodestar the District Court simply stated:
 
 
 62
 The factors to be considered in determining an appropriate multiplier include, inter alia, the contingent nature of success, the delay in receipt of payment, the quality of representation, etc. Accordingly, upon consideration of the entire record herein, the Court finds that a multiplier of 10% to be fair and reasonable.[31]
 
 
 63
 The government argues that the District Court's generalized articulation of its reasons is contrary to this Court's admonition that "district court judges ... state their reasons as clearly as possible." Copeland III, 614 F.2d at 893. We agree. The government further argues that to the extent the multiplier is intended to reflect the contingent nature of the suit the award was improper since the billing rate used in calculating the lodestar already included an allowance for the contingency that the suit would not be a success. The record provides no sure evidence on this issue either way. The Court on remand should reconsider its award of a 10 percent multiplier based on a more complete record.[32]
 
 
 64
 While appellants sought discovery without indicating their precise interests, under the circumstances of this case proper discovery consistent with this opinion should be allowed as to the issues remanded.
 
 
 65
 No. 81-1791-Mark Green, et al. v. Department of Commerce
 
 
 66
 This FOIA case was finally resolved on the merits after lengthy proceedings at the trial and appellate levels by a settlement agreement pursuant to which the Department of Commerce released a large number of boycott compliance reports submitted to the Department under the Export Administration Act, 50 U.S.C.App. § 2401 et seq. (1976). Because the parties were unable to agree that appellees were prevailing parties within the meaning of 5 U.S.C. § 552(a)(4)(E) and, if so, the size of the fee to which they were entitled, the appellees filed an application for an award of attorneys' fees with the District Court. The District Court determined that appellees were entitled to an award of $19,910.00, plus costs. The Court determined that the hours and rates proposed by appellees (ranging from $45 to $95 an hour for different attorneys) were reasonable and that a ten percent multiplier award was appropriate. This fee award provided compensation for work performed at both the trial and appellate levels.
 
 
 67
 Appellant argues that the District Court erred in three respects. First, it contends that insufficient evidence was presented as to the prevailing community rate for FOIA work and that the Court therefore erred in accepting the hourly rates proposed by appellees. Next, it is argued that the District Court erred in accepting all of the hours claimed by appellees, particularly the time spent preparing an amicus brief in another case raising related issues. Finally, appellant objects to the District Court denial of its specific discovery requests and an evidentiary hearing both of which it claims were appropriate in light of the inadequate record support provided for hours and rates claimed.
 
 
 68
 Appellees provided the following in support of their claim that hourly billing rates ranging from $45.00 to $95.00 an hour were reasonable, depending on the experience and responsibilities of the attorney involved:
 
 
 69
 (1) An affidavit prepared by appellees' lead counsel simply stating:
 
 
 70
 I am informed and believe that law firms in Washington, D. C. bill in the range of $100-$200 per hour for partners and in the range of $40-$90 per hour for associates.[33]
 
 
 71
 (2) Citations to numerous recent FOIA or Privacy Act cases in the District of Columbia in which hourly rates allowed or the total fee awarded were alleged to be comparable to the rates and total amount sought in this case.[34]
 
 
 72
 (3) Copies of stipulations in two FOIA cases settled in 1977 in which the government agreed to rates ranging from $40 to $90 per hour and from $45 to $85 an hour. (One attorney seeking fees in this action was counsel in those actions.)[35]
 
 
 73
 (4) Affidavits describing the training and professional accomplishments of counsel.[36]
 
 
 74
 The Court awarded without any discussion or analysis fees at the hourly rates requested.
 
 
 75
 Essentially for the reasons stated in our discussion of the hourly rates allowed in National Association of Concerned Veterans, supra, we find that this evidence of the prevailing rate was insufficient to support the fees claimed. While appellees in this case produced a much more comprehensive listing of recent statutory fee cases in this Circuit, we note that no indication of the actual rates awarded in those cases was provided. A mere listing of unreported opinions in which "comparable" rates were allegedly allowed is hardly of assistance to the District Court in determining the prevailing community rate.
 
 
 76
 The government also challenges the award of all 292 hours claimed on the ground that the documentation of hours expended provided by appellees was too summary. Appellees divided the litigation into four major phases-pretrial litigation, trial phase, Court of Appeals, and remand-and then indicated how many hours individual attorneys had expended during each phase of the litigation. An affidavit prepared by one of the lead counsel supplemented this information by listing the specific work performed by each attorney during each phase of the litigation (e.g., "drafted post-trial motion; drafted interrogatories").[37] Although the applicants state by affidavit that they exercised billing judgment in calculating the number of hours expended on the case there is no indication of how many hours were excluded. In addition to challenging the general sufficiency of these submissions appellant specifically objects to the award of any fees for time spent preparing an amicus brief in a related case; the number of hours involved for this undertaking is not indicated in the fee application.
 
 
 77
 Specific discovery was requested below and in the circumstances of this case it should have been permitted in some respects to test the accuracy of the submissions. No time charges were provided to back up the summary and it appeared at oral argument of the appeal that appellees have no systematic methods for recording time and may not be in a position to provide meaningful records when requested. Once a more complete record has been developed the District Court may, among other things, wish to consider the precise number of hours excluded as a result of the applicants' exercise of "billing judgment" in determining the reasonableness of the hours as claimed. In addition, the District Court should reconsider the reasonableness of the time spent on the amicus brief. Compensable time should not be limited to hours expended within the four corners of the litigation. Cf. Chrapliwy v. Uniroyal, Inc., 670 F.2d 760 at 767 (7th Cir. 1982) (awarding fees for time expended in attempts to have defendant debarred from federal contract to force resolution of a Title VII action). However, there must be a clear showing that the time was expended in pursuit of a successful resolution of the case in which fees are being claimed.
 
 
 78
 Appellees requested a 25 percent multiplier based on the following considerations: (1) quality of representation; (2) contingent nature of the suit; (3) delay of up to three years in receipt of payment; and (4) the case went to trial on the merits and required an appeal before it was resolved. The Court determined that a ten percent multiplier was appropriate.
 
 
 79
 We begin by noting that several of the considerations mentioned above could not properly support a multiplier award or lacked adequate support in the record. We are aware of no authority that supports an adjustment of the lodestar because the case involved a trial and an appeal; given that all hours expended were considered in calculating the lodestar no further adjustment was necessary to reflect the particular nature of the work involved. In addition, no showing was made in the fee application that counsel had performed unusually well taking into account the hourly rate used in calculating the lodestar and the District Court made no finding to this effect. Finally, while the District Court might well have concluded from the non-profit character of one of the plaintiff organizations that counsel would receive no fee, no specific evidence to this effect was provided.
 
 
 80
 The element of delay would ordinarily be sufficient to support a multiplier award in some percentage. However, the government correctly argues that the District Court's generalized articulation of its reasons, which is virtually identical to the language quoted above from the fee award in National Association of Concerned Veterans, supra, decided by the same Judge, fails to satisfy Copeland III. Since the case must be remanded for other reasons, the District Court should take the opportunity on remand to make factual findings supporting a multiplier under Copeland III standards if it determines on remand that any multiplier is still appropriate.
 
 
 81
 No. 81-1965-Beverly L. B. Parker v. Drew Lewis
 
 
 82
 This Title VII action for alleged sex discrimination in the Federal Housing Administration was settled and appellee received a retroactive promotion and back pay in the sum of $4,254.76. After the parties had failed to reach agreement on an appropriate fee award, appellee filed a motion for fees and costs which was opposed by the government. The District Court accepted all of the hours claimed in support of the award as well as the hourly rates proposed for a total fee award of $17,341.74. The District Court declined to award a multiplier on the ground that the hourly rates requested already included an allowance for the contingent nature of the suit.
 
 
 83
 Appellant argues that the hourly rates proposed by appellee and accepted by the District Court were improperly developed and exceeded the prevailing rate in the community. Appellant also challenges the District Court's acceptance of all of the hours claimed, especially the time spent by attorneys for plaintiff conferring among themselves about the case. Finally, appellant asserts that the District Court erred in refusing to permit the government to take discovery as to the appropriateness of the hours and rates claimed and in not conducting an evidentiary hearing.
 
 
 84
 In support of the billing rates claimed the applicant provided the following information:
 
 
 85
 (1) In two Title VII cases against the government settled in 1977 the government agreed to pay fees to one of the lead counsel in this action computed at the rate of $75 per hour. To calculate appropriate billing rates for work performed in subsequent years in connection with this case, counsel adjusted the 1977 hourly rate to reflect increases in the cost of living each year and by adding $5.00 an hour for each year since 1977 to reflect counsel's increasing experience. The formula generated hourly rates of $102, $123 and $138 per hour for the years 1979, 1980 and 1981, respectively.[38]
 
 
 86
 (2) The following statement in an affidavit prepared by one of the lead counsel:
 
 
 87
 We have had clients pay us for work done in 1980 at the rate of $150.00 per hour, a rate we feel is reasonable given our level of experience and expertise in the area of employment discrimination.[39]
 
 
 88
 (3) Affidavits describing counsels' professional background.[40]
 
 
 89
 (4) An affidavit by a former sole practitioner specializing in Title VII work arguing that fee awards are customarily too low to support a legal practice.[41]
 
 
 90
 (5) References to two Title VII actions, one of which was brought in the District of Columbia, that were settled and for which one counsel in this action received compensation at the rate of $101.25 an hour for work done in 1977, $106 an hour for 1978 work and $107 an hour for 1979 work.[42]
 
 
 91
 (6) A listing of 12 recent cases in which the hourly rates ranged from $35 an hour to $200 an hour. Only one-half of these were Title VII or other types of discrimination actions and nine were brought in Circuits other than the District of Columbia.[43]
 
 
 92
 On appeal the government attacks the calculation of current billing rates by adjusting 1977 rates for inflation and increasing experience as "artificial" as well as contrary to the teaching of Copeland III. At oral argument it appeared that neither of the lead counsel had ever litigated a case at the time of the District Court award, a fact heavily relied on by the government in arguing that the rates are excessive. In addition, the government argues that there was no evidence before the District Court supporting the billing rates assigned to the associates who worked on this case.
 
 
 93
 The Court finds that these submissions were insufficient to permit the District Court to perform the calculations mandated by Copeland III. As private counsel with fee-paying clients, the applicants should have provided the Court with more informative data about the value of their services in the market. Furthermore, the method of calculating present fees based on adjustments for inflation and experience is contrary to the teaching of Copeland III. The relevant datum is the prevailing community rate for attorneys of similar qualifications performing similar work, not what rate would be desirable in order to keep pace with inflation or to reward increasing legal expertise.
 
 
 94
 Appellant does not suggest that the record was inadequate to permit the District Court effectively to scrutinize the hours claimed. Attached to the fee application were detailed schedules for each attorney who worked on the case listing specific tasks (e.g., "drafting motion for extension of time; Legal research-pro se attorneys' fees") and the hours expended on each.[44] However, appellant challenges the allowance of hours spent by appellee's counsel conferring together about the case. It was well within the District Court's discretion to allow this time on the theory that attorneys must spend at least some of their time conferring with colleagues, particularly their subordinates, to ensure that a case is managed in an effective as well as efficient manner.
 
 
 95
 In its opposition to the motion for award of attorneys' fees the government requested an opportunity to take discovery. Since the case must be remanded for reexamination of the hourly rate, the government should be permitted on remand to file sharply focused discovery demands relating to this issue.
 
 
 96
 Finally, as to the hearing issue, in Nos. 81-1965 and 81-1364 the government requested a hearing in its oppositions to the motions for award of attorneys' fees.[45] Since discovery was denied in each case the Court cannot determine from the present record whether a hearing may have been needed. This can only be determined after further proceedings in the courts below which will require development of an adequate record based on the procedures outlined above. In 81-1791, no hearing was requested and it was therefore waived. Copeland III, 641 F.2d at 905. However, since this case must be remanded for further proceedings consistent with this opinion the District Court may wish to consider the need for a hearing based on a more complete record.
 
 CONCLUSION
 
 97
 For the reasons stated, the fee award judgments from which the captioned appeals arise are vacated and the cases are remanded for further proceedings consistent with this opinion.
 
 TAMM, Circuit Judge, concurring:
 
 98
 I concur completely in the excellent opinion for the court. It provides sorely needed guidance to applicants for attorneys' fees, opposing parties, and district judges alike. I write only in an attempt to rectify what I perceive to be a misapprehension by the government appellants in these cases of an opposing party's proper role in fee application proceedings.
 
 
 99
 Attorneys' fees applications are, of course, closely related to the merits proceedings from which they arise. At the same time, however, they are more akin to completely separate civil suits. It is the mixed nature of such proceedings, I believe, that gives rise to much of the procedural floundering apparent in the cases at bar. Counsel should not lose sight of the fact that the most elementary principles of civil procedure are nevertheless applicable.
 
 
 100
 The burden of proof is, of course, on the applicant and remains with the applicant throughout the proceedings. The initial burden of proceeding is also on the applicant. The applicant meets this burden by submitting an application accompanied by the sufficiently detailed supporting documentation contemplated by Copeland and clarified by our opinion today. The burden of proceeding then shifts to the party opposing the fee award, who must submit facts and detailed affidavits to show why the applicant's request should be reduced or denied. Just as the applicant cannot submit a conclusory application, an opposing party does not meet his burden merely by asserting broad challenges to the application. It is not enough for an opposing party simply to state, for example, that the hours claimed are excessive and the rates submitted too high.
 
 
 101
 Neither broadly based, ill-aimed attacks, nor nit-picking claims by the Government should be countenanced. District courts should examine with care the "issues" raised by opposing parties. If they appear to be more in the nature of a blunderbuss attack than a precise and well-founded challenge, the Government has failed to carry its burden, and, assuming that plaintiff has met his threshold burden, the fees requested by plaintiff should be awarded.
 
 
 102
 The Government relies heavily in all three of these cases on the district court's failure to permit discovery or to grant a hearing on the issues raised. Until now, the proper procedures for seeking discovery were indeed unclear. Our opinion seeks to clarify them. Nevertheless, the actions of the Government, I believe, merit some comment.
 
 
 103
 Following the filing of the fee application in Parker, the Government requested and was granted three extensions of time to file its response. No attempt to conduct discovery was made; there was no request for production of the time sheets or records. The Government's request for discovery and a hearing was contained in the final paragraphs of the 16-page opposition.
 
 
 104
 In Green, the Government apparently did not feel that prior court permission to conduct discovery was required. Interrogatories and requests for production of documents were sent to plaintiff. The far-ranging and inappropriate nature of these requests caused the district court to enter, at the applicant's request, a protective order. Although the Government, in its opposition to the fee application, specifically reserved the right to conduct further discovery and to request a hearing,* no request for a hearing or for permission to conduct discovery was ever filed.
 
 
 105
 In National Association of Concerned Veterans, the Government sought and received three extensions of time in which to oppose the fee application. No mention of discovery was made in these requests, nor was discovery attempted. Again, the request for discovery and for a hearing were contained in the opposition papers.
 
 
 106
 The Government appears confused concerning the procedures it must follow in order to conduct discovery or request a hearing; thus, I think it important to spell out step-by-step the mechanics. Should circumstances present a genuine need for further exploration, the opposing party must file with the district court a formal request for discovery. The request must state the specific issues on which discovery is needed, point to the particular aspects of the fee application raising the issues, and contain a precise statement of what the discovery is expected to produce. If a discovery request is denied, the district court should, of course, state its reasons.
 
 
 107
 Furthermore, I believe it is important to emphasize that, once it has been determined that the plaintiff is in fact entitled to attorneys' fees, there are only a limited number of bases upon which an opposing party may legitimately challenge the reasonableness of the fee request. Thus, even fewer issues should warrant discovery.
 
 
 108
 In much the same vein, any request for a hearing on issues raised, while it may be contained in the opposition, must specify the precise reasons that a hearing is deemed necessary and the specific issues upon which a hearing should be granted. A simple "request for a hearing" is not sufficient.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. § 292(a) (1976)
 
 
 [1]
 The fee provision of Title VII provides:
 In any action or proceeding under ... (Title VII) the court, in its discretion, may allow the prevailing party, other than the (Equal Employment Opportunity) Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person. 42 U.S.C. § 2000e-5(k) (1976).
 The FOIA fee provision provides:
 The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed. 5 U.S.C. § 552(a)(4)(E) (1976).
 To be entitled to a fee award a claimant under FOIA must satisfy certain eligibility criteria not applicable in Title VII cases. See Fund for Constitutional Govt. v. National Archives, 656 F.2d 856, 872 (D.C.Cir.1981); Nationwide Bldg. Maintenance, Inc. v. Sampson, 559 F.2d 704, 711-12 (D.C.Cir.1977).
 
 
 [2]
 The "market value" approach adopted in Copeland III set the standard for award of counsel fees in Title VII litigation. That approach has, however, been accepted as applicable with appropriate modifications in other types of civil cases in which an award of attorneys' fees is authorized by statute. See Environmental Defense Fund, Inc. v. EPA, 672 F.2d 42 (D.C.Cir., 1982) (Toxic Substances Control Act); Etta v. Seaboard Enterprises, Inc., 674 F.2d 913 (D.C.Cir.1982) (Truth-in-Lending Act). We find that the Copeland III formula is fully applicable to the calculation of a FOIA fee award once the claimant has established his entitlement to a fee award under that Act. See note 1, supra
 
 
 [3]
 This Court, in somewhat special circumstances, recognized that neither fee applicants nor the Court must necessarily resort to the Copeland III methodology in order to calculate fee awards under other statutes. See Alabama Power Co. v. Gorsuch, 672 F.2d 1 at 3 n.10 (D.C.Cir., 1982)
 
 
 [4]
 The Court in Copeland III rejected the so-called "cost-plus" approach in part because it believed that approach would entail a "monumental inquiry on an issue wholly ancillary to the substance of the lawsuit." 641 F.2d at 896
 
 
 [5]
 The primary emphasis in Copeland III was on the steps the District Courts should take in computing a fee award. 641 F.2d at 891-94. The Court did not have occasion to elaborate on the circumstances when discovery or a hearing were required since neither had been requested by the government in the District Court, 641 F.2d at 905, nor did it discuss in any detail the nature of the submissions required
 
 
 [6]
 In Alabama Power Co. v. Gorsuch, 672 F.2d 1 (D.C.Cir., 1982), and Environmental Defense Fund, Inc. v. EPA, 672 F.2d 42 (D.C.Cir., 1982), the Court upheld the rates requested without discussing the adequacy of the documentary submissions. However, in those cases the government did not challenge the reasonableness of the rates, Alabama Power Co., at 4; Environmental Defense Fund, Inc., at 58 & n.11, and the Court therefore had no reason to inquire into the adequacy of the submissions on this issue
 
 
 [7]
 It should be recognized that fees awarded in other cases are probative of the appropriate community rate only if they were determined based on actual evidence of prevailing market rates, the attorneys involved had similar qualifications, and issues of comparable complexity were raised. These difficulties emphasize the need for courts to seek out additional evidence of community rates. Such caveats notwithstanding, data about fee awards in other cases help to ensure comparable treatment of like cases
 As the source of fees awarded, the government has a clear interest in assembling useful information based on recent attorney fee awards in similar cases to assist the District Courts in determining reasonable fees. A blunderbuss array of cases specifically selected to support a low hourly rate does not assist the District Court in determining the prevailing community rate. Carefully selected cases organized in a meaningful fashion, on the other hand, would be extremely useful.
 
 
 [8]
 See City of Detroit v. Grinnell Corp., 495 F.2d 448, 473 (2d Cir. 1974); Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161, 167 (3d Cir. 1973)
 
 
 [9]
 As discussed at p. 1328, precise calculation of the reasonable hourly billing rate will significantly aid the District Court in determining an appropriate adjustment, if necessary, for the risk that no fee would be recovered if the suit were unsuccessful
 
 
 [10]
 Adding the contingency factor to a lodestar computed at prevailing hourly rates could lead to double counting of the contingency factor. This risk of double counting will be reduced if the submission includes data on cases both won and lost
 
 
 [11]
 In Environmental Defense Fund, Inc. v. EPA, 672 F.2d 42 (D.C.Cir., 1982), the Court made a fee award based on the following submission in support of the hours claimed:
 "(1) daily time sheets for attorneys Warren and Butler;
 (2) written declaration from attorneys Warren, Butler and Lennett describing in detail the precise nature of the work performed by them, the hours attributed to each category of work, the approximate numbers of hours discounted as potentially "duplicative" or "nonproductive" and the approximate dates when each category of work was performed;
 (3) an affidavit from Jacqueline Warren describing the history of the litigation, the litigation goals and strategies of EDF, and the qualifications of each of the participating attorneys."
 At 54.
 The Court found that this detailed submission provided more than adequate support for the hours claimed. Id.
 
 
 [12]
 The usefulness of submitting actual time charges to support a fee request has been recognized by this and other courts. See, e.g., Laje v. R. E. Thompson General Hospital, 665 F.2d 724, 730 (5th Cir. 1982); Pete v. UMW Welfare & Retirement Fund, 517 F.2d 1275, 1292 (D.C.Cir.1975) (en banc ). Since the applicant is required in any event to collect the relevant time charges in order to calculate his hours, the additional burden imposed by requiring the applicant to make time charges available to opposing counsel or the Court is small
 
 
 [13]
 In stating that no compensation was due for time spent litigating issues upon which plaintiff did not prevail, the Court in Copeland III emphasized that the courts should adopt a practical approach to this inquiry and time should be excluded "only when the claims asserted 'are truly fractionable.' " Copeland III, 641 F.2d at 892 n.18 (quoting Lamphere v. Brown Univ., 610 F.2d 46, 47 (1st Cir. 1979))
 
 
 [14]
 Copeland III did not purport to establish an exhaustive list of factors to be considered in adjusting the lodestar in contexts other than Title VII. 641 F.2d at 892 n.22. Only one factor not mentioned in Copeland III has been advanced to support a multiplier award, which we reject. See p. 1335. It is therefore unnecessary to consider how claims based on other factors should be documented
 
 
 [15]
 Wolf v. Frank, 555 F.2d 1213, 1215 (5th Cir. 1977); Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 382 F.Supp. 999, 1003 (E.D.Pa.1974), rev'd in part, aff'd in part, 540 F.2d 102 (3d Cir. 1976) (en banc )
 
 
 [16]
 See Copeland III, 641 F.2d at 905 n.57 (noting that a hearing is unnecessary where "the adversary papers filed by plaintiff and defendant ... adequately illuminate the factual predicate for a reasonable fee"). See also Manhart v. City of Los Angeles, 652 F.2d 904, 908 (9th Cir. 1981); Konczak v. Tyrrell, 603 F.2d 13, 19 (7th Cir. 1979), cert. denied, 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980)
 
 
 [17]
 The need for the District Court to conduct a hearing to resolve material factual disputes has been recognized in other cases brought under various statutes containing fee provisions. See Herrera v. Valentine, 653 F.2d 1220, 1233 (8th Cir. 1981); Henson v. Columbus Bank & Trust Co., 651 F.2d 320, 330 (5th Cir. 1981); Harkless v. Sweeny Independent School Dist., 608 F.2d 594, 597 (5th Cir. 1979); Sargent v. Sharp, 579 F.2d 645, 647 (1st Cir. 1978). See also Etta v. Seaboard Enterprises, Inc., 672 F.2d 1 at 6 (D.C.Cir., 1982) (on remand district court may conduct hearing "if necessary"). Cf. Environmental Defense Fund, Inc. v. EPA, 672 F.2d 42 at 54 (D.C.Cir., 1982) (noting that a hearing may be appropriate where an application for attorneys' fees is filed in this Court)
 The Court in Copeland III distinguished cases where the prevailing party seeks to recover fees directly from the loser from those involving recovery of a fee award from a "common fund" generated by a successful class action. 641 F.2d at 905 n.57. In the latter instance the Court suggested that "(a) hearing may be vital." Id. All of the cases cited in the government briefs on these appeals in support of the proposition that the District Court must conduct a hearing whenever the fee is contested are distinguishable on that basis. See City of Detroit v. Grinnell Corp., 495 F.2d 448, 472 (2d Cir. 1974); Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161, 169-70 (3d Cir. 1973); Grunin v. International House of Pancakes, 513 F.2d 114, 127 (8th Cir. 1975).
 
 
 [18]
 The Clerk of the District Court advises that during the last two calendar years Title VII and FOIA cases alone have accounted for over ten percent of the District Court's workload. Other types of litigation also require the Courts to set attorneys' fees and the recently enacted Equal Access to Justice Act, 28 U.S.C.A. § 2412 (1981 Supp.), will tend to engender even more fee demands in the future. See Baez v. United States Dept. of Justice, 662 F.2d 792, 827, n.232 (D.C.Cir.1981) (dissenting opinion), vacated for rehearing en banc (August 18, 1981), (listing "some ninety federal statutes" which authorize fee awards). As some indication of the volume of fee cases in this Court, this panel heard two other appeals from awards of attorneys' fees in addition to the three discussed in this opinion. See Veterans Education Project v. Secretary of the Air Force, No. 81-1741 (D.C.Cir.); Donnell v. United States, Nos. 81-1471, 81-1545 (D.C.Cir.)
 
 
 [19]
 The District Court has sufficient power to enforce the standards provided in this opinion. Where a fee submission is manifestly inadequate, the District Court has no obligation to proceed further and denial is appropriate. In Brown v. Stackler, 612 F.2d 1057 (7th Cir. 1980), the Court said:
 (D)enial (of attorneys fees) is an entirely appropriate, and hopefully effective, means of encouraging counsel to maintain adequate records and submit reasonable, carefully calculated, and conscientiously measured claims when seeking statutory counsel fees. Id. at 1059.
 
 
 [20]
 Appellees cross-appealed to preserve their right to seek a higher billing rate in the event of a remand
 
 
 [21]
 Affidavits of David F. Addlestone and Barton F. Stichman, reprinted in Joint Appendix (J.A.) at 49 & 54
 
 
 [22]
 J.A. at 59-62
 
 
 [23]
 Addlestone and Stichman Affidavits, reprinted in J.A. at 46-56
 
 
 [24]
 J.A. at 71-81
 
 
 [25]
 Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Attorneys' Fees and Other Litigation Costs, at 18-19 (November 7, 1980)
 
 
 [26]
 Order (March 10, 1981) reprinted in J.A. at 16
 
 
 [27]
 Addlestone and Stichman Affidavits, reprinted in J.A. at 50-51 & 55-56
 
 
 [28]
 Stichman Affidavit, reprinted in J.A. at 56
 
 
 [29]
 Order (March 10, 1981), reprinted in J.A. at 16
 
 
 [30]
 Affidavit of William Elmore, reprinted in J.A. at 57
 
 
 [31]
 Order (March 10, 1981), reprinted in J.A. at 17
 
 
 [32]
 The government also challenges the award of a contingency for risk because appellees acknowledged in their application for fees "that there was a relatively small risk that this lawsuit would be unsuccessful." Plaintiffs' Motion for Award of Reasonable Attorneys' Fees and Other Litigation Costs, at 20 (filed November 7, 1980). We find no abuse of discretion in the award of a small contingency where there was at least some risk of failure. See Pete v. UMW Welfare & Retirement Fund, 517 F.2d 1275, 1290 (D.C.Cir.1975) (en banc )
 
 
 [33]
 Affidavit of David C. Vladeck, reprinted in J.A. at 37
 
 
 [34]
 Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Attorneys' Fees, reprinted in J.A. at 29-30
 
 
 [35]
 J.A. at 47-57
 
 
 [36]
 Vladeck Affidavit, reprinted in J.A. at 34-41
 
 
 [37]
 Vladeck Affidavit, reprinted in J.A. at 38-41
 
 
 [38]
 Memorandum of Points and Authorities in Support of Plaintiff's Motion for Attorneys' Fees and Costs, reprinted in J.A. at 14-16
 
 
 [39]
 Affidavit of Valerie V. Ambler, reprinted in J.A. at 32
 
 
 [40]
 Affidavits of Elizabeth L. Newman, Valerie V. Ambler, and Alan H. Sandals, reprinted in J.A. at 23-34
 
 
 [41]
 Affidavit of Richard T. Seymour, reprinted in J.A. at 57-62
 
 
 [42]
 Ambler Affidavit, reprinted in J.A. at 31
 
 
 [43]
 J.A. at 56
 
 
 [44]
 J.A. at 35-42
 
 
 [45]
 In No. 81-1965, see J.A. at 76. In No. 81-1364, see Memorandum of Points and Authorities in Support of Defendants' Opposition to Plaintiffs' Motion for Award of Reasonable Attorneys' Fees and Other Litigation Costs, at 2 (December 15, 1981)
 
 
 *
 Defendant's Opposition to Plaintiffs' Motion for Award of Reasonable Attorneys' Fees and Other Litigation Costs, at 3 n.3, Green v. Department of Commerce, Civ. No. 77-363 (D.D.C. May 14, 1981)