**NATURAL RESOURCES DEFENSE COUNCIL, et al., Plaintiffs,**

v.

**ADMINISTRATOR, ENVIRONMENTAL PROTECTION AGENCY, et al., Defendants.**

**Civ. A. Nos. 75–1698, 2153–73, 75–1267 and 75–172.**

United States District Court, District of Columbia.

June 20, 1984.

Frederick M. Rowe, Edward W. Warren, Philip J. Davis, Robert F. Stauffer, Gen. Counsel, Nat. Coal Assoc., Ronald J. Wilson, J.G. Speth, Edward L. Strohbehn, Jr., Barry J. Trilling, Bingham Kennedy, Christopher S. Rizek, Trilling & Kennedy, Washington, D.C., for plaintiffs.

Thomas A. Pursley, III, Barry Neuman, Donald W. Stever, Jr., Thomas C. Lee, Erica L. Dolgin, Dept. of Justice, Ridgway M. Hall, E.P.A., Carol E. Dinkins, Asst. Atty. Gen., Land and Natural Resources Div., Jose R. Allen, Environmental Defense Section, Washington, D.C., for Anne M. Gorsuch, Russell E. Train and E.P.A.

Theodore L. Garrett, Roberts B. Owen, Douglas E. McAllister, Washington, D.C., for American Min. Congress and E.P.A.

Michael K. Glenn, Washington, D.C., John A. Stichter, New York City, for American Paper Institute and Nat. Forest Products Ass'n.

Robert C. Barnard, Douglas E. Kliever, Charles F. Lettow, Michael A. Wiegard, Cleary, Gottlieb, Steen & Hamilton, Washington, D.C., for Union Carbide Corp., FMC Corp., Dow Chemical Corp., Celanese Corp., E.I. Dupont de Nemours and Co., Exxon Corp. and Monsanto Co.

Richard R. Gardner, Washington, D.C., for Olin Corp.

Richard E. Schwartz, David P. Hackett, Collier, Shannon, Rill & Scott, Washington, D.C., for American Iron and Steel Institute.

Stark Ritchie, James K. Jackson, Arnold S. Block, Washington, D.C., for American Petroleum Institute et al.

Michael B. Barr, Scott Slaughter, Hunton & Williams, Washington, D.C., for Ala. Power Co. et al.

George C. Freeman, Jr., Washington, D.C., for intervenors.

## MEMORANDUM

FLANNERY, District Judge.

This matter comes before the court on the motion of the plaintiffs for attorneys' fees. Plaintiffs are three environmental groups, ("NRDC"), that have been involved in this lengthy environmental litigation. They claim that the Environmental Protection Agency, ("EPA"), as the original defendant, and the intervenor defendants, are liable for fees incurred through plaintiffs' opposition to their respective positions. The government does not oppose an award of fees against it for work reasonably performed by NRDC in opposition to positions taken by the EPA. It does not believe that the amount of fees requested by NRDC is reasonable. The government argues that it should not be liable for work performed by NRDC against the defendant intervenors. Intervenors argue that they should not be liable for any attorneys' fees.

## BACKGROUND

This case has a long and complex history of litigation. A brief review of this history is necessary for an understanding and evaluation of plaintiffs' claim for attorneys' fees. The cases that underlie this application for fees are "citizen suits" brought under 33 U.S.C. § 1365(a)(2) to compel the Administrator of the EPA to perform certain non-discretionary acts in connection with section 307 of the Federal Water Pollution Control Act, ("FWPCA"), 33 U.S.C. § 1317. In March, 1974, a settlement agreement was reached in these cases that has proved to be of great significance in the administation of FWPCA. Numerous industrial groups attempted to intervene so as to participate in the proceedings which were to grow out of this settlement agreement. This court originally denied these motions for intervention, however, the United States Court of Appeals allowed intervention. *NRDC v. Costle*, 561 F.2d 904 (D.C.Cir.1977).

NRDC did not believe that the EPA was complying with the dictates of the settlement agreement, and on September 26, 1978, NRDC moved for an Order to Show Cause why EPA should not be held in contempt. EPA responded with a Motion to Amend the agreement to extend the deadline for promulgating regulations. EPA also sought to make other changes in the agreement. At about the same time, intervenors filed a joint motion to vacate the consent decree. After a series of discussions aimed at settlement of NRDC's contempt motion, the EPA and NRDC agreed upon a joint motion to modify this court's order approving the settlement agreement. They submitted this joint motion to the court on December 15, 1978, and on that same date NRDC withdrew its show cause motion and EPA withdrew its prior motion to modify the agreement. In response, intervenors filed an additional memorandum in support of their joint motion to vacate. Both the EPA and NRDC opposed this motion, and on March 9, 1979, this court denied the joint motion of intervenors to vacate the settlement agreement and granted the joint NRDC-EPA motion to modify the agreement.

On May 7, 1979, several of the intervenors filed an appeal from this court's order. In response, EPA and NRDC submitted separate responsive briefs. These two entities sought to divide the issues between themselves so as to avoid duplication of effort. EPA addressed in detail only the intervenors' procedural objections to the settlement, and NRDC attempted to defend the substance of the settlement. On September 16, 1980, the court of appeals found for EPA and NRDC on all issues raised by the parties. The court, however, *sua sponte*, raised the issue of whether the Settlement Agreement impermissibly infringed on the discretion that Congress had given to the Administrator of EPA. The case was remanded to this court for resolution of that issue.

On remand, several of the intervenors moved to vacate the consent decree based on the issue of discretion cited by the court of appeals. EPA opposed the motion to vacate, but once again moved to modify the consent decree. NRDC opposed both of these motions. On February 5, 1982, this court denied the intervenors' joint motion to vacate, and intervenors appealed from that order. At the same time that this appeal was taken, some intervenors submitted papers supporting EPA's motion to modify. The NRDC filed its opposition to that motion. On May 7, 1982, this court denied the motion to modify the consent decree.

This court has previously addressed the question of attorneys' fees in the context of this case. On August 16, 1978, this court allowed plaintiffs to recover attorneys' fees for work done in achieving the results documented in the settlement agreement. In that same order, this court denied intervenors' request for attorneys' fees. The present application for fees presents a novel issue. As stated above, the government does not oppose the payment of a reasonable fee to plaintiffs for work performed by NRDC *against EPA*. The question remains: who, if anyone, is liable for the fees incurred by NRDC in opposition to positions taken by intervenors. The court attempts to resolve this issue in the discussion that follows.

DISCUSSION

I. Liability

■ Congress provided for the award of attorneys' fees in citizen suits brought pursuant to the FWPCA:

> The court, in issuing any final order in any action brought pursuant to this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate.

33 U.S.C. § 1365(d). This court has already awarded fees to NRDC for work done to attain the settlement agreement. This court has stated that the agreement "has proved to be of very great signifi-

cance in the subsequent administration of the Federal Water Pollution Control Act." Mem. Opinion, August 16, 1978 at 2. It would be an anomalous result to find that NRDC could not be compensated for its efforts to ensure that this agreement was enforced. This court will not subscribe to such a result. The government concedes that NRDC's positions taken against the EPA to further the enforcement of the settlement are compensable. The more difficult question is whether attorneys' fees should be awarded against intervenors for NRDC's efforts to resist intervenors' motions to modify and vacate the settlement agreement.

This question, as it appears in the present case, was not addressed by Congress in the FWPCA. There is no explicit provision that addresses the issue of whether defendant intervenors are liable for attorneys' fees. The structure of the FWCPA as well as its intent must be explored to discover how this question can best be answered in harmony with the purposes Congress sought to achieve in that Act.

■ The starting point of any analysis of attorneys' fees question is the "American Rule" which states that the prevailing party is ordinarily not entitled to collect a reasonable attorneys' fee from the losing party. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). This presumption can be reversed by a clear expression of intent to do so by Congress. The expression of intent contained in the statute, to shift fees when "appropriate" is unenlightening. *See Ruckelshaus v. Sierra Club*, 462 U.S. 680, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983). The role of the intervenors in this litigation must be examined before the court can determine whether an award of fees against them is appropriate. The court of appeals held that the intervenors had significant interests to protect in this case. *NRDC v. Costle*, 561 F.2d 904, 909–11 (D.C.Cir.1977). It found that their intervention was likely to lessen the need for future litigation. *Id.* at

911. The goal that intervenors sought to attain by participating in this lawsuit, arguably, was to ensure that EPA properly implemented and administered the Clean Water Act. To that extent, their role in this litigation was similar to that of NRDC and helped further the goals of the Act.

■ Plaintiffs can point to no legislative history or judicial precedent that would justify an award of attorneys' fees against intervenors in the context of this litigation. *Cf. Northern Plains Resource Council v. EPA*, 670 F.2d 847, 849 n. 4 (9th Cir.1982) (no contribution from private intervenors for attorney fees under Clean Air Act). Their argument boils down to no more than that a prevailing party should be entitled to fees. This is contrary to the American Rule. Although this rule has been reversed under this and similar acts when private parties have prevailed against the government, the Supreme Court has stated that non-governmental entities are to be treated differently. *Ruckelshaus v. Sierra Club*, 103 S.Ct. at 3281 n. 12. The Court stated:

> Differing abilities to bear the cost of legal fees and differing notions of responsibility for fulfilling the goals of the Clean Air Act likely would justify exercising special care regarding the award of fees against private parties.

*Id.*

■ A view of this question from another perspective may shed light on the solution. If intervenors had prevailed in their motion to vacate the settlement agreement, would it be proper to award fees to intervenors against NRDC? This court believes that it would not be proper. NRDC was seeking to further the implementation of the goals of the Act. If it was determined that its position, although not frivolous, *see Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), was not meritorious, NRDC should not be punished or deterred from seeking to enforce what it views as the goals of the Act. This court sees no reason to punish intervenors for attempting to enforce their, non-frivolous view of the Act. The court finds that Congress has not provided the requisite expression of intent to reverse the American Rule against private parties such as the intervenors in this case. NRDC is not, therefore, entitled to attorneys' fees against intervenors.[1]

## II. Reasonable Fees

■ It is well established that the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). This "lodestar" must then be adjusted to coincide with the events of the particular case. The Supreme Court has stated that the "plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under the statute considered." *Id.*, 103 S.Ct. at 1943.

### A. Number of Hours

■ An attorneys' fee application must be sufficiently detailed to allow the court to determine whether the hours claimed are justified. *National Association of Concerned Veterans v. Secretary of Defense*, (*"Concerned Veterans"*), 675 F.2d 1319, 1327 (D.C.Cir.1982). In the present case, plaintiffs followed the "better practice" and prepared detailed summaries indicating the work performed by both attorneys for whom fees are sought. *Id.* The items of work that plaintiffs claim fall into three basic categories: 1. Proceedings before this court involving NRDC's contempt motion; 2. intervenors' appeal from this court's March 9, 1979 order denying their joint motion to vacate the consent decree; 3. proceedings before this court on remand

---

1. This court can find no rationale to justify an award of fees against the government for work performed by NRDC against intervenors. The government should not be held liable for fees incurred in a dispute between private parties. In fact, EPA worked alongside NRDC and prevailed in its opposition to intervenors' motions. This court finds that under these circumstances it is not "appropriate" to award fees against EPA.

concerning EPA's motion to modify the consent decree. Although Mr. James Taylor Banks served as lead counsel for the NRDC case since 1977, plaintiffs also claim fees for Mr. Ronald J. Wilson, who assisted and supervised Mr. Banks. Plaintiffs request compensation for 569.29 hours of Mr. Bank's time, and 148.50 hours of Mr. Wilson's time.

■ In the first category, plaintiffs claim that Mr. Banks worked in opposition to EPA's positions for 178 hours and Mr. Wilson for 60 hours. EPA's main challenge to these claims is that the chores performed by Mr. Wilson are duplicative of those performed by Mr. Banks. It also claims that some of plaintiffs' claims are simply excessive. This court is in firm agreement with EPA that *unnecessary* duplication of effort should not be rewarded. It is not always possible, however, to have only one attorney perform each task by himself. As NRDC correctly notes, as many as four EPA attorneys attended meetings at which EPA claims either Mr. Banks or Mr. Wilson was unnecessary. This court does not find, therefore, that Mr. Banks and Mr. Wilson duplicated efforts in this area.

Plaintiffs' "billing judgment," however, with regard to certain items may be questioned. The Supreme Court has stated that an attorney must exercise billing judgment in his application for fees from his adversary just as he is ethically bound to do when billing a client. *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). Plaintiffs' claims for preparation of the memorandum in support of their motion for an order to show cause and for preparing interrogatories are excessive. Mr. Banks' claim should be reduced by fifty hours and Mr. Wilson's by twenty hours. The other hours claimed are appropriate for the degree of difficulty required by the work that was performed.

Plaintiffs' claim that in opposing intervenors' joint motion to vacate the consent decree Mr. Banks spent 83.25 hours and Mr. Wilson 31.50 hours. As noted above, NRDC will not be compensated for time spent opposing positions taken by intervenors.

The second category once again represents time spent in opposition to positions taken by intervenors and will not be compensated.

■ The third and final category involves work performed by plaintiffs on remand. A large portion of this section represents work done in opposition to intervenors' motion to vacate on grounds first raised by the court of appeals. This matter is once again on appeal and plaintiffs make no claim for this work, pending the outcome of intervenors' appeal. The bulk of the remainder of time was spent in opposition to EPA's motion to modify the consent decree. Mr. Banks spent over one-hundred hours working on discovery requests and motions. EPA argues that this amount of time is excessive because NRDC did not prevail on its discovery motion, and did not substantially benefit from the discovery that it did obtain. This court is in substantial agreement with EPA's position on this matter. In reviewing plaintiffs' discovery requests, this court believes that they were overbroad. Furthermore, it is not clear from plaintiffs' pleadings that the information obtained in discovery was useful in drafting those pleadings. Although a party need not succeed in every phase of the litigation to be awarded attorneys' fees, all unproductive hours should be eliminated from its application for those fees. *See Hensley*, 103 S.Ct. at 1940. Plaintiffs' claim for work done on discovery matters should be reduced by seventy hours. Plaintiffs' claim for work performed while preparing their memorandum in opposition to EPA's motion is also excessive and should be reduced by twenty hours.

In summary, plaintiffs will be allowed to recover for 157.19 hours for Banks and 47 hours for Wilson from the EPA.

B. Reasonable Rate

■ An applicant for attorneys' fees bears the burden of bringing forth specific evidence of the prevailing community rate for the type of work that he performed in

the specific case. The "best evidence" of a reasonable rate is that customarily charged by the applicant. *Concerned Veterans*, 675 F.2d at 1325. Plaintiffs request a fee of $110 per hour for Mr. Banks and $150 per hour for Mr. Wilson.

Mr. Banks has provided this court with a detailed record of his experience in this area, but he did not provide the court with adequate documentation for his billing rate, *e.g.*, fees awarded in other similar cases. This court believes that, at current market rates, the work performed by Mr. Banks in this case should be compensated at a rate of $85 per hour.

Mr. Wilson is a more experienced attorney, who has been practicing law for over twenty-two years. Once again, however, Mr. Wilson has not provided this court with adequate documentation of actual billings to justify his requested rate. He has indicated that his billing rate is $100–110 per hour for commercial cases. On environmental matters, such as the present case, he charges a reduced rate between $40 and $60 per hour. Although Mr. Wilson is not limited to the rate actually charged in this reduced fee agreement, this rate does not help to document his requested rate. Furthermore, Mr. Wilson participated in this case in a supervisory capacity, and did not lend his considerable expertise to the day-to-day matters in this case. This court finds that Mr. Wilson should be compensated at a rate of $100 per hour.

C. Adjustment of "Lodestar"

The key factor in the adjustment of the lodestar is the degree of success that the applicant has achieved in the case. The Supreme Court has stated that where an applicant "has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley*, 103 S.Ct. at 1940. This court finds that the plaintiffs in this case have achieved "excellent results" and are entitled to the full amount of the lodestar. Plaintiffs have done nothing to justify any adjustment of the lodestar, let alone an award of 210 percent of that fig-

ure. The result in this case was not extraordinary and would not require a fee award of over double the lodestar amount. Furthermore, any delay in payment of the fee is compensated by the award of attorneys' fees at the current market rate for work performed in this case. *See Concerned Veterans*, 675 F.2d at 1329.

III. Fees Expended in Preparing Application for Attorneys' Fees.

It is beyond question that time spent litigating a fee request is itself compensable. *See Copeland v. Marshall*, 641 F.2d 880, 896 (D.C.Cir.1980). To hold otherwise would thwart the intent of the attorneys' fees provision of this Act and would penalize plaintiffs who attempt to comply with the requirements of *Concerned Veterans, supra*. The more difficult problem involves where liability for these fees should fall. The majority of Trilling & Kennedy's work in preparing this application would have been performed even if intervenors had not entered the case. All of the documentation concerning the reasonable rates for Banks and Wilson would have had to have been prepared. Although the record would have been somewhat less substantial, Trilling & Kennedy would have conducted a review of that record, nonetheless. This court is unable to determine what percentage intervenors added to the work performed by Trilling & Kennedy. Because, as stated above, the bulk of this work was not necessitated by intervenors' presence in the case, this court finds that EPA is liable for the work done by Trilling & Kennedy.[2]

EPA argues that plaintiffs are not entitled to any remuneration for the preparation of the fee application because they did not enter into any serious fee negotiations. Although meaningful negotiation should be encouraged at all stages of litigation, it is not a prerequisite for obtaining

---

**2.** As stated below, a downward adjustment will be made in the hours charged to EPA approxi-

mating the time spent applying for fees against intervenors.

attorneys' fees under this statute. This court will not write such a restriction into the language of the Act.

 Trilling & Kennedy have provided adequate documentation of the number of hours worked on the application. There was some inefficiency caused by the hiring of an outside firm to prepare the application, however, even though that inefficiency was partially compensated for by the reduction of 102.60 hours from the number of hours requested. Furthermore, it appears that an excessively detailed review of the record was conducted. Finally, a significant portion of the application is devoted to arguing that NRDC is entitled to fees against intervenors. As stated above, this argument failed. This court finds that the remaining hours should be reduced to 50 hours for Kennedy & Trilling and 40 hours for Sosnick and Doherty. Furthermore, it is not proper billing judgment to compensate the preparation of the fee application at a higher rate than the preparation of the case-in-chief. Mr. Trilling and Mr. Kennedy, therefore, should be compensated at a rate of $90 per hour, and Ms. Sosnick and Ms. Doherty should be compensated at a rate of $40 per hour. Nothing in the record warrants an upward adjustment of this figure.

An appropriate Order accompanies this Memorandum.

## ORDER

This matter comes before the court on the motion of the plaintiffs for attorneys' fees. After careful consideration of the memoranda submitted by the parties as well as the entire record herein, in it, by the court, this 20th day of June, 1984,

ORDERED that plaintiffs shall be entitled to attorneys' fees against EPA in the amount of $24,161.15 ($13,361.15 of which represents attorneys' fees for Banks; $4,700 for Wilson; $4,500 for Trilling and Kennedy and $1,600 for Sosnick and Doherty).