**Dorothy M. COOK, et al., Plaintiffs,**

v.

**John R. BLOCK, et al., Defendants.**

**Civ. A. No. 82–2659.**

United States District Court, District of Columbia.

March 15, 1985.

Ann S. DuRoss, Asst. U.S. Atty., Washington, D.C., for defendants.

David J. Lloyd, Washington, D.C., for plaintiffs.

## MEMORANDUM AND ORDER

AUBREY E. ROBINSON, Jr., Chief Judge.

### I. INTRODUCTION

Before the Court is the application of plaintiffs for attorney's fees incurred in connection with their successful employment discrimination suit. The parties settled this suit, as reflected in this Court's order of December 9, 1983. The terms of this settlement provided that plaintiff Cook receive a retroactive promotion to a GS–12 level with grade increases and full back pay, and that plaintiff Lewis receive a retroactive promotion to a GS–12 level and a cash payment.[1] The Court now must determine what attorney's fees are due plaintiffs.

■ The attorney's fee provision of Title VII, under which plaintiffs sued for relief, permits a district court, in its discretion, to award attorney's fees and costs to a prevailing party. The statute provides in pertinent part:

> In any action or proceeding under ... [Title VII] the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs...." [2]

The purpose of awarding fees in civil rights litigation is "to encourage individuals injured by ... discrimination to seek judicial relief by enabling them to obtain adequate counsel for their meritorious claims." [3] Where, as is the case here, plaintiffs have achieved relief by virtue of a negotiated settlement, rather than by a trial on the merits, the requirement that the recipient of the fees be a "prevailing party" is satisfied.[4] Therefore, plaintiffs in this action

---

**1.** This Court's order of settlement does not reflect plaintiff Lewis' increase to a grade GS–12 level. It appears to the Court, however, that this increase, though not a formal element of the negotiated settlement, was at least induced by the lawsuit.

**2.** 42 U.S.C. § 2000e–5(k) (1982).

**3.** *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968).

**4.** *See Firebird Society v. Members of the Board of Fire Commissioners,* 433 F.Supp. 752 (D.Conn. 1976), *aff'd,* 556 F.2d 642 (2d Cir.1977). In *Commissioners Court of Medina County, Texas v. United States,* 683 F.2d 435 (D.C.Cir.1982), the

are eligible for an award of attorney's fees pursuant to the provisions of Title VII and the applicable case law.

 The most useful starting point for determining the amount of a reasonable fee "is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." [5] This method of calculation, commonly termed the "lodestar" method, provides the district court with a lodestar figure that presumptively represents the amount of a reasonable fee award.[6] Although the amount is presumed reasonable, the fee in some cases may be adjusted to reflect various factors.[7]

## II. CALCULATION OF THE LODESTAR

### A. *Hours Reasonably Expended*

 An applicant for attorney's fees is entitled only to an award for time reasonably expended. "It does not follow that the amount of time *actually* expended is the amount of time *reasonably* expended.[8] Consequently, a court may not award fees where time was spent on unsuccessful claims, where an attorney engaged in nonproductive work,[9] or where extraneous time was billed because a case was overstaffed.[10] Applicants preparing an attor-

ney's fee petition must use their professional "billing judgment" in arriving at the lodestar figure [11] and must be prepared to document their claim with "contemporaneous, complete and standardized time records which accurately reflect the work done...." [12] The application need not present "the exact number of minutes spent," [13] but should enable the court to make "an independent determination whether or not the hours claimed are justified." [14]

 The Court in this case, after review of the time statements prepared by plaintiffs' counsel, finds that, with minor exceptions, the hours claimed were reasonably expended. Plaintiffs have requested compensation for 90 hours for Sheila Albright, who represented plaintiffs during the administrative phase of the litigation, and for 220 hours for David Lloyd, who represented plaintiffs during the trial preparation and settlement phases of the litigation. Defendants have objected only to 5.7 hours claimed by plaintiffs for Mr. Lloyd, urging that these hours were spent nonproductively or inefficiently. Based on these objections and the Court's independent review of the hours claimed, the Court finds that the hours claimed by Albright and Lloyd are

---

D.C. Circuit noted that, in the absence of a merits adjudication, a party is a "prevailing party" if "first, the party ... substantially received the relief sought, and, second, the lawsuit [was] a catalytic, necessary or substantial factor in attaining the relief." *Id.* at 440. The Court finds in this case both that plaintiffs have received the relief they sought and that the institution of the lawsuit was a necessary antecedent to achieving such relief. Therefore, both plaintiffs are prevailing parties in this litigation.

5. *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *see also Copeland v. Marshall,* 641 F.2d 880, 890–91 (D.C.Cir.1980) (en banc) (*"Copeland"*).

6. *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Laffey v. Northwest Airlines, Inc.,* 746 F.2d 4 (D.C.Cir.1984) (*"Laffey II"*).

7. An adjustment to the lodestar is appropriate where, for example, a risk exists that counsel will receive no fee, where a delay exists in receipt of payment, or where the representation received is unusually good or bad. *See Copeland,* 641 F.2d at 892. *See also National Associ-*

*ation of Concerned Veterans v. Secretary of Defense,* 675 F.2d 1319 (D.C.Cir.1982) (per curiam) (*"Concerned Veterans"*).

8. *Copeland,* 641 F.2d at 891.

9. "Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Id.*

10. *Hensley v. Eckerhart,* 461 U.S. at 434, 103 S.Ct. at 1940; *Veteran's Education Project v. Secretary of the Air Force,* 515 F.Supp. 993 (D.D.C.1981), aff'd mem., 679 F.2d 263 (D.C.Cir.1982).

11. *Laffey v. Northwest Airlines, Inc.,* 572 F.Supp. 354, 361 (D.D.C.1983) (*"Laffey I"*) aff'd in part and remanded in part, 746 F.2d 4 (D.C.Cir.1984).

12. *Concerned Veterans,* 675 F.2d at 1327.

13. *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 167 (3rd Cir.1973).

14. *Concerned Veterans,* 675 F.2d at 1327.

reasonable, subject to the following reductions.

### 1. Eliminated Hours

 a. Plaintiffs have requested 0.3 hours expended on December 5, 1982 on drafting a praecipe of counsel's address change. This item is not properly charged to the defendants. Maintaining proper records and informing those with whom one has a business relationship of an address change are incidental to engaging in a law practice and are costs which mustbe borne by the attorney. Therefore, the amount of the award will be reduced by 0.3 hours.

 b. Plaintiffs also have requested a total of 9.0 hours expended between September 14, 1983 and March 16, 1984 on preparation of time documentation. The Court believes that, as with the address change notification, this item is incidental to orderly maintenance of records and is not chargeable to the defendants. The Court has been careful not to eliminate hours spent on attorney's fee research or editing of the documents, but the Court is not prepared to permit plaintiffs to charge defendants nine hours for their lawyer keeping records of his time. The Court also takes judicial notice of the fact that many private law firms do not bill clients for the time expended in keeping daily log sheets of their hours. While not dispositive, this practice suggests that it is part and parcel of the business of engaging in the practice of law to maintain orderly office records.

 Lloyd avers that he exercised billing judgment in his petition for fees by excluding nonproductive hours from his request. The preferred practice for an attorney who has excluded non-productive or

excessive hours is to indicate "the nature of the work and the number of hours involved...."[15] Lloyd has not supplied this information, but merely has stated:

> Plaintiffs would note Mr. Lloyd has already exercised independant [sic] billing judgment in this case. Nonproductive time has been excluded from this petition. The exact amount of time involved is not known. *No records are kept to indicate nonbillable time,* but adjustments have been made.[16]

Despite this deficiency in the fee application, the Court is able to discern in this case that the time claimed was necessary and reasonable and that any nonproductive time was excluded from the request. The same is true with respect to Albright's request, which also fails to note what, if any, hours were excluded. Therefore, the failure to include nonbillable time in this case is not a basis upon which to reduce the number of hours claimed.[17] That counsel in this case exercised professional billing judgment is further evidenced by the fact that defendants take issue only with 5.7 of the hours claimed (although the Court has reduced the hours expended beyond this figure) and by the fact that the total number of hours claimed is relatively low.[18]

c. In addition, the Court has decided that 4.3 hours expended by plaintiffs' counsel Lloyd should not be allowed. These are hours which were expended by Lloyd either in attempting to reach parties on the telephone or in filing documents with the Court.

 Lloyd has billed repeatedly hours spent attempting to contact witnesses or parties at $110.00 an hour. This is an excessive rate for these calls and Lloyd has not offered any evidence which would sug-

---

**15.** *Id.* at 1327–28.

**16.** Plaintiffs' Petition at 12 (emphasis added).

**17.** *See Arrington v. National Broadcasting Corp.,* No. 81–2019, slip op. (D.D.C. Jan. 23, 1984).

**18.** The Court notes that the approximately 300 hours spent by the two attorneys in this case does not appear to be excessive in light of the

circumstances of the case. This case progressed through an administrative and a litigation stage, involved two plaintiffs, and presented complex legal questions. *Cf. Hensley v. Eckerhart,* 461 U.S. at 436, 103 S.Ct. at 1941. (Court hypothesizes that expenditure of 2,557 hours in a case in which plaintiff prevails only on one of six claims would be "clearly excessive").

gest an appropriate rate. Unpersuaded that Lloyd has exercised professional billing judgment regarding this matter, the Court denies the request for these hours.

■■■■ Lloyd also has billed hours expended by him for personal filing of documents. Although Lloyd has represented that it was in fact more economical for him to file the papers at $110.00 an hour than it would have been to hire a messenger, he has provided the Court with no documentation or elaboration to support this astounding proposition. The Court therefore also denies the request for these hours. Therefore, plaintiffs are entitled to attorney's fees in the amount of 90 hours for Sheila Albright and 206.4 hours for David Lloyd.[19]

### B. *Reasonable Hourly Rate*

■■■■ The reasonable hourly rate is "that prevailing in the community for similar work."[20] In determining the reasonable hourly rate, relevant factors include the time and labor required, the novelty and difficulty of the issues, the amount involved and results obtained, and the experience, reputation and ability of the attorneys.[21] In *Concerned Veterans*, the District of Columbia Circuit stated that "the best evidence [of the prevailing hourly rate] would be the hourly rate customarily charged by the affiant himself or by his law firm."[22]

Plaintiffs have requested $100.00 an hour for Ms. Albright and $110.00 an hour for Mr. Lloyd. According to the fee arrangements entered into by plaintiffs and counsel Lloyd, the latter has already received exactly one-half of his total fees directly from plaintiffs. Lloyd explains that he altered his usual rate to permit the private individuals involved to afford legal services, but that it was at all times understood that his charge for services was $110.00 an hour.[23]

Defendants counter that "Mr. Lloyd's fee here should be $55.00 an hour."[24] Relying on *Concerned Veterans*, defendants stress that the rate customarily charged by the lawyer is the best evidence of the prevailing hourly rate. Lloyd charged Cook and Lewis $55.00 an hour, so the argument goes, therefore, he is entitled only to $55.00 an hour in fees.

■■■■ In reconciling these two arguments, the Court begins with the premise that the hourly rate customarily charged by the party seeking compensation, if within the range of rates charged by other lawyers for similar work in the same community, presumptively constitutes the market rate for purposes of calculating the lodestar.[25] The Court concludes that the rate charged by Albright was $100.00 an hour. The parties do not dispute this amount. The Court also concludes that the rate charged by Lloyd was $110.00 an hour—his usual billing rate for civil rights cases. Although plaintiffs *paid* only $55.00 an hour, this fee arrangement was

---

**19.** Plaintiffs' petition for attorney fees includes a request for time expended in preparing the petition itself. It is beyond question that "time spent litigating a fee request is itself compensable." *Copeland,* 641 F.2d at 896. *See also Arrington v. National Broadcasting Corp.,* No. 81–2019, slip op. (D.D.C. Jan. 23, 1984). So long as the hours requested are reasonable, are not duplicative, *Turgeon v. Howard University,* No. 81–2973, slip op. (D.D.C. Nov. 16, 1983), and do not "result in a second major litigation," *Hensley v. Eckerhart,* 461 U.S. at 437, 103 S.Ct. at 1941, as is the case here, the hours expended in preparing the fee petition are compensable.

**20.** *Concerned Veterans,* 675 F.2d at 1324–27; *Copeland,* 641 F.2d at 892.

**21.** *Concerned Veterans,* 675 F.2d 1319; *Copeland,* 641 F.2d 880; *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974); *Laffey I,* 572 F.Supp. 354.

**22.** 675 F.2d at 1325.

**23.** Plaintiffs' Petition at 13.

**24.** Defendants' Response at 6.

**25.** *Laffey II,* 746 F.2d 4; *see also Concerned Veterans,* 675 F.2d 1319; *Copeland,* 641 F.2d 880.

entered into as an accommodation to plaintiffs to permit them to pursue their meritorious claims. Although the parties' fee arrangement is not binding on the Court,[26] the Court is satisfied that Lloyd actually charged $110.00 an hour. As the rates are well within the range of acceptable rates charged by other lawyers for similar work in Washington, D.C., $100.00 an hour for Albright and $110.00 an hour for Lloyd are the reasonable hourly rates for purposes of calculating the lodestar.

Therefore, plaintiffs are entitled to attorney's fees in the following amounts:

1. Sheila Albright

| | | |
|---|---|---|
| 90.0 hours at $100.00 an hour | = | $ 9,000.00 |
| Total | | $ 9,000.00 |

2. David Lloyd

| | | |
|---|---|---|
| 206.4 hours at $110.00 an hour | = | $22,704.00 |
| Total | | $22,704.00 |

In addition, plaintiffs request compensation for $534.35 for costs incurred by Mr. Lloyd, as follows:

| | |
|---|---|
| Filing Fee | $ 10.00 |
| Service Fee | 60.00 |
| Expert Witness | 250.00 |
| Photocopying | 187.10 |
| Telephone Calls | 19.25 |
| Travel | 8.00 |
| Total | $534.35 |

The Court finds that these costs were reasonably expended by plaintiffs in pursuing their claims, therefore, the Court allows them in their entirety, as follows:

| | |
|---|---|
| 1. Sheila Albright | None claimed |
| 2. David Lloyd | $534.35 |

Plaintiffs thus are entitled to a total of $32,238.35.[27]

## III. ADJUSTMENTS TO THE LODESTAR

The lodestar generally compensates lawyers adequately for their services, however, the lodestar amount may be adjusted upwards or downwards to reflect factors peculiar to the litigation. In *Copeland v. Marshall*, the District of Columbia Circuit explained that such an adjustment may be appropriate "to compensate for the risk that the lawsuit would be unsuccessful and that no fee at all would be obtained," "[to incorporate] [t]he delay in receipt of payment for services rendered," and "to reflect the quality of representation." [28] However, the District of Columbia Circuit recently has reiterated that " 'an upward fee adjustment to compensate for the risk of losing—if ever appropriate (and *Blum* did not decide that it ever would be appropriate)—is permissible only in an exceptional case.' " [29]

In this case, plaintiffs have argued that "the delays they experienced, the financial difficulties and uncertainties involved in this case and the complexity of the issues raised justify an upward adjustment of . . . 30%." [30] Defendants counter that "no adjustment should be made to [the fee]." [31] Defendants support this contention by noting, first, that plaintiffs' counsel was in fact paid (at $55.00 an hour) and, second, that the award of present day rates com-

---

**26.** Although a fee arrangement between the attorney and his client is not binding on a court, *Clark v. American Marine Corp.*, 320 F.Supp. 709, 711 (E.D.La.1970), *aff'd*, 437 F.2d 959 (5th Cir.1971), in this case the Court is satisfied that Lloyd actually charged $110.00 an hour.

**27.** The Court has indicated that certain charges must be eliminated from plaintiffs' petition. The Court does so in fulfilling its duty to oversee orderly and fair charging of attorney's fees in civil rights cases. The Court wishes to emphasize that it is *not* making a statement on the propriety of any fees or rates negotiated by plaintiffs and their counsel.

**28.** 641 F.2d at 892–94. *See also Concerned Veterans,* 675 F.2d at 1328; *Laffey I,* 572 F.Supp. at 376.

**29.** *Laffey II,* 746 F.2d at 29 (D.C.Cir.1984) (quoting *Murray v. Weinberger,* 741 F.2d 1423, at 1432 (D.C.Cir.1984)).

**30.** Plaintiffs' Petition at 14.

**31.** Defendants' Response at 8–9.

pensate counsel adequately for any delay in receipt of payment for services. Each basis for adjustment to the lodestar is discussed below.

### 1. *The Risk That No Fee Would Be Obtained*

 The risk that no fee would be obtained simply was not present in this case. Plaintiffs paid counsel at a reduced rate as the litigation progressed. There was, of course, the risk that counsel would not receive the remainder of the full fee—an additional $55.00 an hour—but this does not negate the fact that there was *no risk,* other than the risk of noncollection incurred by any creditor, that counsel would "receive no significant remuneration unless the lawsuit is successful...."[32] Thus, there was no "actual possibility" that the fee applicant would have lost the case and recovered no fee,[33] because, even if the litigation had proven unsuccessful, counsel still would have collected $55.00 an hour. As recently stated by the District of Columbia Circuit, "[t]he upward adjustment [in the lodestar] is not proper when ... the applicant bore little or no risk of nonpayment because of a fee arrangement with the client...."[34]

### 2. *The Delay in Receipt of Payment*

 Plaintiffs' argument here is plagued by the same problem addressed above, that counsel was paid for one-half of his full fees as the litigation progressed. Therefore, the adverse impact on the delay in receipt of fees is much mitigated by the payments already made to Mr. Lloyd. Al-though counsel bemoans the "significant cash-flow problems" he has incurred,[35] he has throughout the litigation had the advantage of prompt partial payment.[36]

### 3. *The Quality of Representation*

 This issue is not briefed by the parties. The Court is satisfied that counsel performed at a level not exceeding what one would expect from counsel earning $100.00 an hour or more. Therefore, the quality of representation is fully accounted for in the lodestar.

 The Supreme Court has required a district court in every case in which an adjustment to the lodestar has been requested to "make it clear that it has considered the relationship between the amount of the fee awarded and the results obtained."[37] Recognizing that the amount of fees to be awarded bears a direct relationship to the success of the plaintiffs, the Court in this case finds that the total attorney's fees of $32,238.35 represent a fair and adequate award in light of the successful settlement obtained by the plaintiffs.

---

**32.** *Laffey I,* 572 F.Supp. at 377.

**33.** *Donnell v. United States,* 682 F.2d 240, 254 n. 43, (D.C.Cir.1982), *cert. denied,* 459 U.S. 1204, 103 S.Ct. 1190, 75 L.Ed.2d 436 (1983).

**34.** *Murray v. Weinberger,* 741 F.2d 1423, 1431 (D.C.Cir.1984).

**35.** Plaintiffs' Petition at 8.

**36.** The delay in receipt of payment in this case is, at the most, slightly over two years. In light of the fact that counsel has been paid for one-half of his services, the effect of any delay is further minimized. *Cf. Laffey v. Northwest Airlines,* 572 F.Supp. at 380 ("This action was filed in 1970 and has been litigated vigorously and almost continuously ever since. Plaintiffs' counsel have yet to receive one penny of compensation for over 13,300 hours of work") (citations omitted).

**37.** *Hensley v. Eckerhart,* 461 U.S. at 437, 103 S.Ct. at 1941.