**SIERRA CLUB, et al., Plaintiffs,**

**v.**

**Francis M. MULLEN, Jr., Acting Administrator, Drug Enforcement Administration, et al., Defendants.**

**The NATIONAL ORGANIZATION FOR the REFORM OF MARIJUANA LAWS (NORML), Plaintiff,**

**v.**

**UNITED STATES DRUG ENFORCEMENT ADMINISTRATION (DEA), et al., Defendants.**

**Civ. A. Nos. 83–2592, 83–2595.**

United States District Court, District of Columbia.

Oct. 4, 1985.

Frederick S. Middleton, III, Howard I. Fox, Sierra Club Legal Defense Fund, Kevin B. Zeese, Peter H. Meyers, Eric S. Sirulnik, Washington, D.C., for plaintiffs.

James Draude, Dept. of Justice, Washington, D.C., for defendants.

## OPINION

JUNE L. GREEN, District Judge.

The above-styled action is before the Court on plaintiff National Organization for the Reform of Marijuana Laws's ("NORML") application for attorneys' fees and costs, pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, defendant United States Drug Enforcement Administration's ("DEA") opposition thereto, NORML's reply to DEA's opposition, DEA's supplemental memorandum in opposition to NORML's fee petition, and the entire record herein. For the reasons set forth below, the Court awards NORML $8,767.55 in attorneys' fees and costs.

### Statement of Facts

In August 1983, DEA used paraquat to eradicate marijuana in the Chattahoochee National Forest in Georgia and in the Daniel Boone National Forest in Kentucky. On September 1, 1983, the Sierra Club, the National Coalition Against the Misuse of Pesticides, and the Friends of the Earth (hereafter collectively "Sierra Club") filed a complaint (Civil Action No. 83–2592) and motion for temporary restraining order, challenging DEA's use of paraquat to eradicate marijuana on public lands.

Sierra Club claimed: (1) that a nationwide program of aerial spraying of paraquat to eradicate marijuana on public lands is a major federal action significantly affecting the quality of the environment and that DEA violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq., by failing to prepare an environmental impact statement ("EIS") on such eradication, Sierra Club Complaint ¶¶ 2, 25–31; and (2) that use of paraquat on undeveloped, federal lands and other areas of wildlife habitat is not consistent with the currently approved paraquat label and, therefore, violates the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 et seq. Sierra Club Complaint ¶¶ 2, 32–35. Sierra Club requested the Court to enjoin defendants from "the aerial application of paraquat on public lands for the eradication of marijuana" until they prepare an EIS and to "enjoin defendants from using paraquat in a manner inconsistent with its label, including the aerial application of paraquat on all Forest Service and public lands and other areas of wildlife habitat." Sierra Club Complaint ¶ 36.

On September 1, 1983, NORML also filed a complaint (Civil Action No. 83–2595) and motion for a temporary restraining order challenging DEA's use of paraquat to eradicate marijuana in the United States. NORML alleged: (1) that defendants violated NEPA by failing to prepare an EIS

on the spraying program, NORML Complaint ¶¶ 1, 33–38; (2) that defendants violated regulations of the Council on Environmental Quality ("CEQ"), NORML Complaint ¶¶ 1, 39–42; (3) that defendants violated DEA's environmental assessment, and associated guidelines, NORML Complaint ¶¶ 1, 43–44; (4) that defendants violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, by failing to publish DEA's finding of no significant impact 30 days prior to spraying, NORML Complaint ¶¶ 1, 44–46; (5) that defendants' conduct was arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law, NORML Complaint ¶ 48; (6) that defendants violated the constitutional and civil rights of NORML's members, giving rise to a cause of action under *Biven v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) and 42 U.S.C. §§ 1983, 1985, NORML Complaint ¶¶ 1, 49–52; and (7) that defendants committed various common law torts, including assault, intentional infliction of emotional distress, and negligence. NORML Complaint ¶¶ 53–55).

NORML sought declaratory and injunctive relief, $10 million compensatory damages, and $20 million punitive damages. NORML Complaint at 21. NORML sought a Court order instructing defendants to prepare an EIS on "the herbicide spraying program in the United States" and to enjoin defendants "from obligating or expending any funds, or providing any other support or assistance to the herbicide spraying program in the United States against marijuana plants." NORML proposed temporary restraining order; NORML Complaint at 21.

Following briefing and argument, on September 13, 1983, this Court entered a temporary restraining order reciting that it appears that aerial spraying of paraquat on public lands by defendants violates the EIS requirement of NEPA and the use restrictions of FIFRA.[1] The Court enjoined defendants "from further aerial spraying of paraquat on U.S. federal lands until further hearing in this case can be had."

On September 14, 1983, defendants informed plaintiffs that they would not use paraquat to eradicate marijuana on U.S. federal lands unless and until defendants prepare an EIS on such a program. In light of that development, defendants moved on September 23, 1983, to stay further proceedings in this case until defendants prepared an EIS and filed it with the Court. Sierra Club and NORML opposed defendants' motion.

NORML filed an amended complaint on October 4, 1983. NORML deleted claims regarding constitutional and civil rights violations and common law torts, and added a claim under FIFRA. Amended Complaint ¶¶ 49–51. NORML also dropped its claims for compensatory and punitive damages. Amended Complaint at 19–20.

Upon stipulation of the parties, on November 8, 1983, this Court signed a consent judgment. The consent judgment prohibits the defendants from using, or authorizing the use of, "paraquat to eradicate on U.S. federal lands unless and until defendants prepare an [EIS] on such use in compliance with the [NEPA] and regulations of the Council on Environmental Quality." Consent Judgment ¶ 1. Second, defendants agreed not to "use or authorize the use of, paraquat to eradicate marijuana on U.S. federal lands under the paraquat label currently registered with the Environmental Protection Agency pursuant to [FIFRA]. . . ." Consent Judgment ¶ 2.

As provided in the consent judgment, Consent Judgment ¶ 5, and in compliance with the EAJA, 28 U.S.C. § 2412(d)(1)(B), Sierra Club and NORML submitted applications for attorneys' fees and costs. Sierra Club subsequently settled with the defendants and is no longer a party to this action. NORML requests a sum of $35,512.12, which includes court costs and expenses.

---

1. The cases, Civil Action Nos. 83–2592 and 83–2595, were consolidated by order on September 9, 1983.

## Conclusions of Law

The EAJA provides in relevant part: Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. 2412(d)(1)(A).

## I. *NORML Is a Prevailing Party*

The EAJA authorizes an award of attorneys' fees only to a "prevailing party." 28 U.S.C. § 2412(d)(1)(A). To qualify as a prevailing party, NORML must prevail on some significant issue in the case "which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir. 1978); *see also Environmental Defense Fund, Inc. v. E.P.A.*, 716 F.2d 915, 919 n. 7 (D.C.Cir.1983) ("[a] party may be deemed prevailing if he obtains a favorable settlement of his case ..."). The Court finds that NORML meets this test.

■ The defendants argue that NORML did not contribute significantly to the litigation by asserting that NORML did not prevail on any of "its" claims. Defendants' Memorandum in Opposition to Plaintiff NORML's Application for an Award of Attorneys' Fees and Expenses ("Defendants' Opposition") at 9. This assertion does not comport with the course of events. After consultation between the two plaintiff groups, Sierra Club and NORML simultaneously filed separate suits against the defendants on September 1, 1983. *See* Affidavits of Frederick S. Middleton, III; Jay Feldman; and Elizabeth Raisbeck. Their litigation strategy involved pursuing different avenues, yet the destination remained essentially the same. Sierra Club and NORML both sought to enjoin defendants from continuing the paraquat spraying program until such time as they should conform with the provisions of NEPA. Sierra Club Complaint at 16; NORML Complaint at 21; Amended Complaint at 19.

■ In response to the defendants' motion, this Court ordered, on September 9, 1983, that the two actions be consolidated. Though consolidation under Fed.R.Civ.P. 42(a) does not so completely merge the two cases as to deprive any party of substantial rights that he would have possessed had the actions proceeded separately, NORML was a party to the consent judgment which settled the litigation between all the parties. *See Midwest Community Council v. Chicago Park District*, 98 F.R.D. 491 (D.C. Ill.1983).

The consent judgment afforded NORML most of the relief they sought. Amended Complaint at 19. Furthermore, a comparison of the relief requested by NORML in its original complaint with that sought in its Amended Complaint reveals the fallacy of the defendants' assertion that NORML merely intervened at the last moment and claimed Sierra Club's victory as its own. Defendants' Opposition at 13. Thus, the Court finds that NORML did succeed on important issues in litigation which brought "some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. at 433, 103 S.Ct. at 1939.

■ Additionally, the Court notes that NORML, in its amended complaint, based its second cause of action on a violation of agency rules. To wit, NORML alleged that the defendants were in violation of "Council of Environmental Quality regulations for compliance with NEPA...." Amended Complaint ¶ 41. Defendants conceded this issue in the consent judgment. Consent Judgment at 1. As this particular claim was nowhere alleged by Sierra Club, NORML is clearly a prevailing party on this issue.

## II. *Defendants' Position Was Not Substantially Justified*

■ Because NORML is a prevailing party, it is entitled to attorneys' fees under the EAJA unless the defendants can demonstrate that "the position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A); *Spencer v. NLRB*, 712 F.2d 539, 557 (D.C.Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984).[2] The legislative history of the EAJA indicates that the test of whether or not a government position is substantially justified is "slightly more stringent than one of reasonableness." *Spencer v. NLRB*, 712 F.2d at 558 (footnote omitted). Following this standard, the Court concludes that the litigation position of the United States in this case was not substantially justified.

With regard to the issues contested in this litigation, controlling legal standards were clear, but were overtly ignored by the defendants. "[T]he more clearly established are the governing norms, and the more clearly they dictate a result in favor of the private litigant, the less 'justified' it is for the government to pursue or persist in litigation." *Spencer v. NLRB*, 712 F.2d at 559.

■ As for the claims asserted under NEPA, it is well settled in this Circuit that a federal agency must prepare an EIS prior to taking any action that creates the potential for significant adverse environmental effects. *Maryland-National Capitol Park and Planning Commission v. U.S. Postal Service*, 487 F.2d 1029, 1039 (D.C. Cir.1973); *Foundation on Economic Trends v. Heckler*, 587 F.Supp. 753, 762 (D.D.C.1984). Of particular relevance is *National Organization for the Reform of Marijuana Laws v. U.S. Department of State*, 452 F.Supp. 1226 (D.D.C.1978). The court found that the defendants (one of which was DEA) violated NEPA, 42 U.S.C. § 4332, by participating in a paraquat spraying program of marijuana and poppy plants in Mexico without first preparing,

circulating and considering a detailed EIS on the effect within the United States of such a program. It is difficult to conceive how the government's position of not preparing an EIS for a comprehensive paraquat spraying program on public lands throughout the United States was reasonable when an EIS had been mandated previously for U.S. involvement in the Mexican spraying program.

■ The defendants' position was equally unjustified with regard to the FIFRA claim. The defendants' action was in clear violation of FIFRA, 7 U.S.C. § 136j(a)(2)(G), which states that "[i]t shall be unlawful for any person ... to use any registered pesticide in a manner inconsistent with its labeling...." The aerial spraying of paraquat for non-crop use on public lands is contrary to the express provisions of the EPA-approved label for paraquat which took effect on May 19, 1983. This label prohibits the use of paraquat in areas of recognized wildlife habitat such as highway, railroad, utility and pipeline rights-of-way. Such corridors which run through forest areas are prime areas of wildlife exposure. *See* Memorandum of Points and Authorities in Support of Plaintiffs' Motion for a Temporary Restraining Order at 20–22.

The defendants conducted their paraquat operation in open violation of both the letter and spirit of NEPA and FIFRA. This course of conduct was then aggravated by the government's attempt to defend these actions in court, wasting the time and resources of the Court and plaintiffs. A temporary restraining order was issued in the plaintiffs' favor, pointing to ultimate victory for the plaintiffs. The defendants quickly moved to stay the proceedings, and then initiated settlement discussions. The resulting Consent Judgment of November 8, 1983, granted plaintiffs a clear victory.

■ It is well settled in this Circuit that in cases, such as the present one, where the government engages in an unreasonable course of conduct contrary to established

2. It is well settled in this Circuit that the "position of the United States" is that advanced during litigation, not that taken at the agency level. *Spencer v. NLRB*, 712 F.2d at 557.

legal principles, defends its action in court, and then settles the case, giving plaintiffs the relief they requested—fees must be granted. In its comprehensive discussion of the EAJA, the *Spencer* court explained,

> It seems clear that if the government does not immediately accede to the plaintiff's demand, but instead initially opposes his claims and then at some later stage ... surrenders, the United States would be liable for attorneys' fees.... Under such circumstances, not only will government have acted unreasonably, but it will have adopted (at least briefly) a litigation position lacking substantial justification.

712 F.2d at 555 n. 58; *see also Environmental Defense Fund v. EPA*, 716 F.2d 915 (D.C.Cir.1983) (fees granted where EPA took unreasonable action and initially defended that action in court, then settled the case favorably to plaintiff only after plaintiff had filed its brief on the merits).

### III. *Award of Attorneys' Fees*

#### A. *NORML's Contribution as a Prevailing Party*

The only issue remaining is the amount of attorneys' fees to which NORML is entitled. NORML's attorneys, Erik S. Sirulnik, Peter H. Meyers, and Kevin B. Zeese, request a total of $35,512.12 for legal services.

NORML contemplated an action for monetary and punitive damages, asserting constitutional and tort claims, as well as, NEPA, APA, and CEQ violations. Following consolidation of the NORML suit and the Sierra Club suit, NORML filed an amended complaint. NORML dropped its claims for monetary and punitive damages, constitutional and tort law violations, but added a claim under FIFRA. The consent judgment granted the plaintiffs relief under NEPA, CEQ regulations, and FIFRA only. *Supra* at 1246–1248.

It is well settled that parties can be compensated only for the issues on which they prevail. *Hensley v. Eckerhart*, 461 U.S. at 433–37, 103 S.Ct. at 1939–41; *Copeland v. Marshall*, 641 F.2d 880, 892 n. 18

(D.C.Cir.1980) (en banc). By this reckoning, NORML may be compensated only for work performed on the NEPA, CEQ, and FIFRA claims. The Court's duty, now, is to determine what NORML's contribution to victory actually was. This is especially important here as NORML's amended position largely overlapped Sierra Club's extant efforts. *Miller v. Staats*, 706 F.2d 336, 341 n. 32 (D.C.Cir.1983).

As stated earlier, NORML is due credit for the provision in the consent judgment concerning compliance with CEQ regulations. *Supra* at 1248–1249. The extent of NORML's contribution on the NEPA claim is unclear, as both NORML and Sierra Club asserted NEPA-based claims in their original complaints. In its amended complaint, NORML added a claim under FIFRA that largely repeats Sierra Club's FIFRA claim.

In short, NORML significantly reshaped its action in the image of Sierra Club's suit. Indeed, NORML admits that the decision was made whereby Sierra Club "would take the lead role in arguing" the NEPA and FIFRA claims which became the basis of Sierra Club's and NORML's consent judgment victory. Plaintiff NORML's Response to Defendant's [sic] Opposition to Plaintiff's Request for Attorneys' Fees at 7. Furthermore, it was Sierra Club that actually negotiated the stipulation for consent judgment with the defendants. Affidavit of James T. Draude, lead defense counsel.

■ From this, it is apparent that NORML performed in an advisory role, assisting in some of the legal and factual research. NORML's contribution as a prevailing party was as an adjunct to Sierra Club. *See* Affidavits of Elizabeth Raisbeck; Jay Feldman, Sierra Club co-plaintiffs; and Affidavit of Frederick S. Middleton, III, Sierra Club lead counsel. Thus, the Court finds some merit in the defendants' claim of exaggerated hours and duplication of work on NORML's part. The Court cannot compensate NORML for these hours. *Action on Smoking and*

*Health v. C.A.B.*, 724 F.2d 211, 220–21 (D.C.Cir.1984).

 Further complicating the Court's effort to ascertain the degree of NORML's contribution as a prevailing party are the deficiencies in documentation of time expended on the case. NORML's three attorneys each submitted time logs and supporting affidavits, claiming a total of approximately 230 hours of work on the underlying case. These records, some of which are after-the-fact estimates, *see* Supplemental Affidavits of Meyers and Sirulnik, are at best vague and at worst cryptic. The time logs provide little or no reference to the substance of the work claimed. As such, they are insufficient to enable the Court to access accurately the work that should be compensated and that which is duplicative or excessive. *Hensley v. Eckerhart*, 461 U.S. at 434, 103 S.Ct. at 1939; *see also National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1327 (D.C.Cir.1982) ("[c]asual after-the-fact estimates of time expended on a case are insufficient to support an award of attorneys' fees.")

In making its fee determination, a court is not required to " 'become enmeshed in a meticulous analysis of every detailed facet of the professional representation.' " *Copeland v. Marshall*, 641 F.2d at 903 (quoting *Lindy Brothers Builders v. American Radiator & Standard Sanitary Corporation*, 540 F.2d 102, 116 (3d Cir. 1976) ). Accordingly, the Court will make a reduction in the requested award. *Hensley v. Eckerhart*, 461 U.S. at 433, 103 S.Ct. at 1939; *Action on Smoking and Health v. C.A.B.*, 724 F.2d at 220.

### B. *The Lodestar*

In this Circuit, courts determine the appropriate award of attorneys' fees by establishing a "lodestar" rate, which is the number of hours reasonably expended multiplied by a reasonable hourly rate. The courts may then adjust the lodestar rate upward or downward by use of a multiplier to reflect various factors. *National Asso-*

*ciation of Concerned Veterans v. Secretary of Defense*, 675 F.2d at 1323.

### 1. *Hourly Rate*

 In establishing the lodestar rate, the Court must first determine a reasonable hourly rate, which this Circuit has defined as "that prevailing in the community for similar work." *Copeland v. Marshall*, 641 F.2d at 892. The fee applicant is charged with providing the Court with "specific evidence" of the prevailing community rate for similar services which the attorney performed. *National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d at 1325. Adequate proof includes affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases, fees awarded by courts or through settlements to attorneys of comparable experience rendering comparable services, and the hourly rate customarily charged by the fee applicant. "What is needed are some pieces of evidence that will enable the District Court to make a reasonable determination of the appropriate hourly rate." *Id.* at 1326.

NORML claims $75 per hour, the maximum rate allowed by the EAJA, 28 U.S.C. § 2412(d)(2)(A), for each of its three attorneys. Messrs. Meyers, Sirulnik, and Zeese each submitted affidavits outlining their qualifications.

Peter H. Meyers graduated from law school in 1971. He had practiced law for 12 years at the time of the underlying action and he is a member of the faculty at George Washington University Law School. Mr. Meyers has argued cases before numerous federal and state courts, including the United States Supreme Court. In addition, Mr. Meyers has authored or edited several legal publications in the area of drug law. Mr. Meyers asserts that he would receive $100 to $125 per hour if engaged in private practice. Meyers Affidavit ¶¶ 2, 3, 4, 6, 7. The Court finds that an hourly fee of $75 for Mr. Meyers is justified given his experience.

Eric S. Sirulnik received his J.D. in 1968 and a Masters of Law degree in 1971. He is a tenured law professor at George Washington University Law School, and is admitted to practice before the Bars of Massachusetts and the District of Columbia. Mr. Sirulnik also has substantial litigation experience. Mr. Sirulnik asserts that he could command $100 to $125 per hour if engaged in the private practice of law. Sirulnik Affidavit ¶¶ 2, 3, 5, 6, 7. Given Mr. Sirulnik's experience, the Court finds that an hourly rate of $75 is reasonable.

Kevin B. Zeese graduated from law school in 1980 and is admitted to practice in the District of Columbia. Since 1980, Mr. Zeese has been with NORML as an attorney and, since August 15, 1983, the NORML National Director. Mr. Zeese also maintains a private law practice which is 90 percent criminal law. Mr. Zeese states that if engaged in private practice, he could command an hourly fee of $75 to $150. Affidavit ¶¶ 2, 3, 7, 8. Taking into account Mr. Zeese's limited experience, the Court finds that an hourly fee of $60 is reasonable. *See generally Veterans Education Project v. Secretary of the Air Force*, 515 F.Supp. 993, 995 (D.D.C.1982), *aff'd*, 679 F.2d 263 (D.C.Cir.1982).

### 2. *Number of Hours*

■ NORML claims that its three attorneys spent 230.60 hours on the underlying action and 61.25 hours on the attorneys' fees issue. As discussed earlier, the Court finds that NORML's suit substantially overlapped the Sierra Club action. *See supra* at 1250. As a result of the duplication of efforts and the insufficient documentation of time expended on NORML's part, the Court will make an 80 percent reduction in the number of hours claimed by NORML in the underlying action. The Court will compensate fully NORML's attorneys for the hours expended on the attorneys' fees issue. *Environmental Defense Fund v. Environmental Protection Agency*, 672 F.2d 42 at 62 (D.C.Cir.1982).

### 3. *The Multiplier*

■ Finally, NORML seeks a multiplier of 48.29 percent to reflect a cost-of-living increase based on the Consumer Price Index (8.29 percent), quality of representation (20 percent), and bad faith on the defendants' part (20 percent). The EAJA authorizes a cost-of-living adjustment, and the Court grants this increase pursuant to 28 U.S.C. § 2412(d)(2)(A)(ii).

■ The Court will not entertain NORML's request for an upward adjustment of 20 percent to reflect the quality of representation. Such an adjustment is justified only on rare occasions. The Court of Appeals addressed itself to this issue in *Donnell v. United States*, 682 F.2d 240, 254 (D.C.Cir.1982):

> We have found it all too common for the District Courts to adjust the lodestar upward to reflect what the courts view as a high level of quality representation. This trend should stop. *Copeland* contemplated such adjustments only for rare cases: "A quality adjustment is appropriate only when the representation is unusually good or bad, taking into account the level of skill normally expected of an attorney commanding the hourly rate used to compute the 'lodestar.'"

*Accord, National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d at 1329 ("an adjustment for the quality of representation should not routinely be awarded.") No such quality adjustment will be made here, especially given NORML's secondary role in the underlying litigation.

■ NORML also claims a 20 percent upward adjustment for the defendants' bad faith. This Court need not decide whether bad faith is among the factors that justify an upward adjustment of the lodestar, as the Court finds no such bad conduct on behalf of the defendants. *See Copeland v. Marshall*, 641 F.2d at 905–08.

### C. *Summary of Attorneys' Fees Award*

| Attorney | Fee Application Hours | Underlying Case Hours | 80 Percent Reduction | Rate | Total |
|---|---|---|---|---|---|
| Meyers | 25.50 | (79.0) | 15.80 | $75 | $3097.50 |
| Sirulnik | 6.0 | (23.0) | 4.6 | $75 | 795.00 |
| Zeese | 29.75 | (128.60) | 25.72 | $60 | 3328.20 |

Total Fees = $7220.70
Cost of Living Adjustment = 8.29%
Total Fees Awarded = $7819.30

### D. *Expenses*

 NORML also seeks expenses, available under the EAJA, 28 U.S.C. § 2412(d)(2)(A). The Court awards NORML litigation expenses totaling $938.25, including expenses incurred during the attorneys' fees issue. Zeese Affidavit ¶ 10; Supplemental Zeese Affidavit at 3.

### E. *Court Costs*

NORML also seeks court costs in the amount of $10.00. The Court awards NORML $10.00 in court costs pursuant to the EAJA, 28 U.S.C. § 2412(a). Zeese Affidavit ¶ 10.

### IV. *Conclusion*

NORML was a prevailing party in the underlying litigation and the defendants' litigation position was not substantially justified. In accordance with the EAJA, the Court awards NORML attorneys' fees, litigation expenses, and court costs. The Court, however, finds that NORML's contribution as a prevailing party was more in the nature of an adjunct to Sierra Club. The poor documentation of time expended on the underlying case by NORML's attorneys served only to hinder the Court in its attempt to distinguish accurately genuine contributions on NORML's part from duplication of Sierra Club's efforts. An appropriate order is attached.

### ORDER

Upon consideration of plaintiff National Organization for the Reform of Marijuana Law's application for award of attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412 (1982), defendants' opposition thereto, plaintiff's response, the entire record herein, and for the reasons stated in the accompanying opinion, it is by the Court this 4th day of October 1985,

ORDERED that plaintiff's request for award of attorneys' fees, court costs, and expenses is granted; it is further

ORDERED that defendants shall pay to plaintiff attorney's fees of $7,819.30, divided among Peter H. Meyers, Eric S. Sirulnik, and Kevin B. Zeese as provided in the Court's Opinion; it is further

ORDERED that defendants shall pay plaintiff's expenses of $938.25; and it is further

ORDERED that defendants shall pay plaintiff's court costs of $10.00.