**KENNECOTT CORPORATION, Petitioner,**

v.

**ENVIRONMENTAL PROTECTION AGENCY, Respondent.**

**ASARCO INCORPORATED and Magma Copper Company, Petitioners,**

v.

**ENVIRONMENTAL PROTECTION AGENCY, Respondent.**

**The BUNKER HILL COMPANY, Petitioner,**

v.

**ENVIRONMENTAL PROTECTION AGENCY, Respondent.**

**MOLYCORP, INC., Petitioner,**

v.

**ENVIRONMENTAL PROTECTION AGENCY, Respondent.**

**ASARCO INCORPORATED, et al., Petitioners,**

v.

**ENVIRONMENTAL PROTECTION AGENCY, Respondent.**

**Nos. 80–2036, 80–2039, 80–2040, 80–2041 and 81–1173.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 23, 1986.

Decided Nov. 7, 1986.

Bruce C. Swartz, with whom Nancy C. Shea, Washington, D.C., was on the motion for award of attorneys' fees, for petitioners, ASARCO, Inc., et al.

Carl Strass, Atty., Dept. of Justice, Washington, D.C.; for respondent.

Before BORK, STARR and SILBERMAN, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

This case involves a dispute over attorneys' fees that grows out of our decision in *Kennecott Corp. v. EPA*, 684 F.2d 1007 (D.C.Cir.1982). In that case, petitioners were partially successful in challenging EPA regulations governing the issuance of primary nonferrous smelter order (NSO) regulations. On June 13, 1985, the original panel issued a brief per curiam order granting petitioners' request for attorneys' fees in the amount of $203,140.[1] EPA petitioned for rehearing, and the court, acting *en banc*, vacated the panel's order of June 13, 1985, and reassigned the case to the present panel for further consideration on the fees issue.

EPA challenges petitioners' fee request on several grounds. EPA argues that petitioners "completely lost" on two issues and should not recover fees for time spent addressing those issues. The agency also contends that the fee request should be further reduced because petitioners have inadequately documented their request and because various specific items in the request are "suspect." Petitioners respond that no deduction should be made for the claims on which they were unsuccessful because overall they achieved "excellent results" and are therefore entitled to a "fully compensatory fee." *See Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). Petitioners also contend that their fee request has been carefully documented and that market forces can be relied upon to substantiate the reasonableness of the specific items of the request challenged by EPA. We hold that petitioners are entitled to attorneys' fees, but conclude that the fee amount ultimately awarded to petitioners must be reduced in light of poor documentation and petitioners' lack of success on one issue.

---

1. In addition, the panel reaffirmed its previous award of costs in the amount of $2,065 and denied petitioners' request for other costs. We do not reconsider that aspect of the order.

We then refer the remaining factual issues to a magistrate.

## I.

Petitioners' fee request is grounded on section 307(f) of the Clean Air Act, which provides:

> In any judicial proceeding under this section, the court may award costs of litigation (including reasonable attorney and expert witness fees) whenever it determines that such award is appropriate.

42 U.S.C. § 7607(f) (1982). While most fee statutes are limited to "prevailing" parties, *see, e.g.,* 5 U.S.C. § 552(a)(4)(E) (1982) (Freedom of Information Act fee awards), Congress in enacting section 307(f) specifically decided not to limit the class of potential beneficiaries in that manner. *See* H.R. Rep. No. 294, 95th Cong., 1st Sess. 337, *reprinted in* 1977 U.S. Code Cong. & Admin. News 1077, 1416. Thus, on its face, section 307(f) does not mandate success as a prerequisite to a fee award. The Supreme Court has held, however, that Congress did not by this broad standard intend to authorize fees for parties that were wholly unsuccessful on the merits. *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983). Similarly, this circuit has determined that parties are not entitled to fees under section 307(f) for time spent on *issues* on which they were wholly unsuccessful. *Sierra Club v. EPA,* 769 F.2d 796, 802 (D.C.Cir.1985).

*Sierra Club* derived this issue-by-issue approach from *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). There, in applying a "prevailing party" fee statute, the Supreme Court held that when a plaintiff presents "distinctly different claims for relief that are based on different facts and legal theories," *id.* at 434, 103 S.Ct. at 1940, there can be no fee award for unsuccessful issues. The Court concluded that "[t]he congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful

claim." *Id.* at 435, 103 S.Ct. at 1940 (footnote omitted).

As we have seen, Congress did not intend in section 307(f) to limit fee awards to prevailing parties. But the Supreme Court in *Ruckelshaus* determined that Congress did intend that section 307(f) be limited to parties who demonstrate at least some success. This court in *Sierra Club* examined *Hensley* and *Ruckelshaus* and concluded that a party may recover fees only for issues on which it achieved a "modicum of success," a lower standard than that of "prevailing party" and one that this court determined was consonant with the standard set forth in section 307(f). *Sierra Club,* 769 F.2d at 800, 802.

With these principles in mind, we are called upon to make an issue-by-issue assessment of petitioners' success and discount the fee request for time spent on issues on which a "modicum of success" was not achieved. 769 F.2d at 801–02; *see Hensley,* 461 U.S. at 434–36, 103 S.Ct. at 1939–41. In this case, petitioners advanced three basic arguments on the merits: that EPA's procedural actions in promulgating the NSO regulations at issue were improper; that EPA's regulations concerning a financial test for NSO eligibility were inconsistent with the statute; and that EPA did not have statutory authority to require a particular treatment for certain sulfur dioxide streams.

In its examination of the merits, this court ruled favorably on petitioners' procedural and financial-test claims, but rejected the sulfur dioxide streams argument. *Kennecott v. EPA,* 684 F.2d at 1013–20. In a footnote, the court also rejected one argument petitioners advanced in attacking the financial eligibility test, concluding that their claim—that the test improperly usurped the role of the States—was "without merit." *Id.* at 1014 n. 18.

■ In light of this court's disposition of the various issues on the merits, we conclude that the ultimate fee award must be discounted for petitioners' failure to succeed on the sulfur dioxide streams issue.

Petitioners' attack in this respect was predicated on their reading of EPA regulations to require installation of an additional acid plant to treat those streams. Petitioners claimed that EPA's imposition of such a requirement conflicted with the statute itself. This court disagreed, stating: "We cannot agree with Asarco and Magma's basic premise. There is, on this record, no basis to conclude that EPA's bypass rules require a smelter to install additional acid plant capacity." 684 F.2d at 1015.

Since it is clear that this circuit is "extremely reluctant to award fees for time expended on ... unsuccessfully raised issues," *Sierra Club*, 769 F.2d at 802 (applying *Hensley*), petitioners now attempt to cast the court's conclusion in this regard not as a "loss," but as a failure to reach the merits. *See* Memorandum of ASARCO and Magma on Rehearing Regarding Attorneys' Fees at 12 (May 1, 1986). If that were so, there would be no basis for reducing the fee. *See Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940 (a court's "failure to reach" an issue is not grounds to reduce a fee award). But that is not the case. To be sure, our court did not reach the issue whether requiring an additional plant would conflict with the statute, but it failed to address that issue because it rejected petitioners' interpretation of the regulations. It is unreasonable and wrong to characterize a specific rejection of the fundamental predicate of petitioners' argument as a "failure to reach" the issue. By virtue of the court's dismissal of their argument, petitioners fall short in this respect of the requisite "modicum of success." *Sierra Club*, 769 F.2d at 800. We hold that the ultimate award of fees to petitioners must be reduced by the amount of compensation that petitioners have claimed for time spent on the sulfur dioxide streams issue. If it cannot be discerned from the record how much time was spent on this argument, the ultimate fee award shall be reduced by one-third, since this

argument was one of petitioners' three primary arguments.

■ Petitioners were similarly unsuccessful in their argument regarding the exclusive regulatory power of the States. As we have seen, however, this argument was advanced in the form of an alternative attack on the validity of the financial eligibility test for NSO's.[2] Petitioners claimed that the test was inconsistent with the statute and that its imposition usurped the exclusive regulatory power of the States. The court rejected the second line of argument, but accepted the first, vacating the regulations and remanding to EPA for further proceedings. *Kennecott*, 684 F.2d at 1014, 1020. Petitioners were thus completely successful on their challenge to the financial eligibility test, and the court's rejection of their alternative (State power) challenge to the same test provides no grounds for reducing the fee. As the Supreme Court instructed in *Hensley:* "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940; *see also Sierra Club*, 769 F.2d at 803 (awarding fees for unsuccessful challenge to one aspect of a certain regulatory definition because a separate challenge to another aspect of the same definition was successful). Accordingly, the fee request is correct insofar as it compensates petitioners for time spent on the issue concerning the States' regulatory power.

## II.

■ Our review of petitioners' fee request has been greatly hampered by the inadequacy of the records submitted by petitioners. Petitioners have refused to provide the contemporaneous time logs that were compiled to detail the hours spent on this litigation. Instead, they have

---

**2.** In their 93–page opening brief on the merits, petitioners devoted 22 pages to the challenge to the financial eligibility test, of which only 4½ pages dealt with the state-power issue. This contention was clearly a subsidiary, alternative argument.

provided two other sets of documents. The first is the stack of monthly bills sent by the firm to its clients, which do not separate the work billed on this litigation from other services performed for the same companies. A typically uninformative entry reads:

Disbursements for the period April 1 through June 30, 1980 (duplicating, postage, long-distance telephone charges, out-of-town travel expenses: Mr. Beers to New York (4/7/80) and Ms. Shea to New York (6/11/80), miscellaneous expenses) ... $1,479.97.

Bill from Shea & Gardner to Magma Copper Company (Sept. 2, 1980). The second set of documents, which purports to segregate from those monthly bills the work done on this case, contains generalized summaries of work performed during the individual billing periods, summaries that were themselves reconstructed from the contemporaneous time records that have been withheld. The summaries are only slightly more enlightening. A typical entry identifies the work performed for a given period as follows:

Analysis of final NSO regulations; first joint petition for review; research.

Monthly Breakdown of Attorneys' Fees, Billing Period July 1, 1980 to Sept. 30, 1980.

These documents are of very little help. Because they do not reveal how much time has been spent on each issue, we are unable to make that calculation ourselves unless we resort to a mechanical percentage figure. Other items in dispute here, such as the amount of time spent on the reply brief and whether time has been billed even though it relates only to work before the agency, have also been made more difficult to resolve as a result of the imprecision of the documentation. This is one reason why contemporaneous time charges are general-ly required. *See McCann v. Coughlin,* 698 F.2d 112, 130 n. 18 (2d Cir.1983).

This circuit and others have indicated that contemporaneous time charges should be filed with the motion for attorneys' fees as a matter of course, and certainly should be provided once legitimate questions are raised by the opposing party. *See Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 952 (1st Cir.1984); *McCann,* 698 F.2d at 131; *National Association of Concerned Veterans v. Secretary of Defense,* 675 F.2d 1319, 1327 & n. 12 (D.C.Cir.1982). Petitioners suggest that because these fees were originally submitted to a private client—in contrast to the situation surrounding most fee litigation—market discipline will ensure that the bills are not inflated, and less exacting scrutiny from this court is needed. We disagree. As we have explained, the time records are necessary in order for us to resolve disputed questions about what work was actually done. Moreover, we are not prepared to hold that the willingness of a private client to pay a bill necessarily demonstrates that the charge was reasonable under the statutory definition and can therefore be automatically assessed against the government.[3]

█ Fee applicants bear the "heavy obligation to present well-documented claims," *Concerned Veterans,* 675 F.2d at 1324, and that obligation was not met here. A fee award may be discounted as a result of poor documentation. *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939. Accordingly, we hold that the ultimate award of fees to petitioners must also be reduced by 15%.

### III.

EPA has raised a number of factual issues pertaining to the reasonableness of petitioners' fee request: whether the number of hours spent on the reply brief, on

---

**3.** Petitioners point to *Laffey v. Northwest Airlines,* 746 F.2d 4 (D.C.Cir.1984), to support their argument about reliance on the market as a check upon the reasonableness of attorneys' fee requests. *Laffey,* however, is inapposite here; it relied on the market mechanism only to establish the reasonableness of hourly *rates,* not to establish the reasonableness of all aspects of a fee request. *Id.* at 13–25. Reliance on the market as a check on other aspects of a fee request, such as allotment of tasks, was only accepted to the extent those other items were found independently by the court to be "reasonable." *Id.* at 26.

the bill, and on preparation for oral argument were excessive; whether the number of attorneys used by Shea & Gardner was unreasonable; and whether petitioners' fee request includes time that cannot be recovered because it was spent only on matters before the agency.[4] Statutory provisions like section 307(f), which provide attorneys' fees for direct appeals of agency action to an appellate court, require factual inquiries that we are ill-equipped to judge in the first instance. Accordingly, we refer these remaining factual matters to a magistrate. Although appellate courts do not have express authority to appoint magistrates under the Federal Magistrates Act, 28 U.S.C. § 631 (1982), nothing in the statute prohibits us from exercising our traditional equitable powers—in cooperation with the District Court for the District of Columbia—to appoint a magistrate to assist us in making factual inquiries. *See Ex parte Peterson*, 253 U.S. 300, 312–14, 40 S.Ct. 543, 547–48, 64 L.Ed. 919 (1920).

In sum, we wish to restate our precise disposition of this case. The specific factual issues that we have identified as relevant to the reasonableness of petitioners' fee request are referred to a magistrate with instructions to determine if any aspects of the petitioners' request are unreasonable and, if necessary, to make appropriate adjustments to the $203,140 request.[5] After making any such adjustments, the magistrate shall reduce the ensuing figure in two respects. First, the figure shall be reduced by the amount necessary to reflect petitioners' lack of success on the sulfur dioxide streams issue. If the amount of this adjustment cannot be discerned from the record, then the figure shall simply be reduced by one-third. The remaining sum shall then be reduced by 15% for poor documentation to yield the ultimate fee award.

*It is so ordered.*

---

4. EPA also contends that petitioners should not receive fees at its attorneys' commercial rate but rather "at the same rate as environmental lawyers who regularly handle similar issues." In *Laffey,* however, we rejected that argument and held that as long as the fees the firm charges are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation," 746 F.2d at 25 (quoting *Blum v. Stenson,* 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984)), the firm's established billing rates provide fair compensation, *id* at 24–25. In our view, the actual billing rates in the present case were appropriately used in calculating the fee request.

5. We would suggest, however, that two of the charges contained in the fee request seem excessive on their face. Petitioners seek fees for over 50 hours of attorney time spent preparing the bill. That figure seems unreasonable, especially if contemporaneous time charges are kept. Additionally, at least four attorneys devoted at least 93 hours of time to preparation for oral argument. (We say "at least" because portions of the time spent on preparation were amalgamated within the monthly breakdowns along with other activities, and thus it is impossible for us to know precisely how many hours above 93 were spent.) Given the substantial amount of time that already had been committed to researching and writing the briefs, 93 hours seems an excessive amount of time to prepare for oral argument. If there are facts of which we are unaware that justify these apparently excessive claims, the magistrate is, of course, free so to find.